# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WALTER OLIVER, JR.,

Defendant-Appellant.

UNPUBLISHED
March 12, 2015

No. 318411
Kent Circuit Court
LC No. 12-011445-FH

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Defendant was convicted by a jury of arson (preparation to burn property of $20,000 or more), MCL 750.77(1)(d)(*i*),[1] and aggravated stalking, MCL 750.411i. Defendant was sentenced as a habitual offender, fourth-offense, MCL 769.12, to 152 months' to 50 years' imprisonment. He appeals as of right. Because the trial court did not abuse its discretion by admitting relevant other-acts evidence in the form of preliminary examination testimony relating to a previous arson offense and defendant is not entitled to resentencing, we affirm.

For approximately two years, defendant and the victim in the case, Kartina Harrison, were involved in an intimate relationship. After the relationship ended, defendant began stalking Harrison and she obtained a personal protection order against him. Defendant's stalking behavior included sending notes to Harrison, her family, her friends and even her employer. Defendant would also park his vehicle outside Harrison's apartment, or her place of work, and knock on the windows to her home. He similarly parked outside the home belonging to Harrison's mother when Harrison was visiting and he tapped on the windows to the house.

Most significant to the present case, on November 26, 2012, early in the morning hours before Harrison left for work, defendant tapped on her window and told her to "come outside because he was going to kill [her]." Harrison called the police, but defendant left before they arrived. A short time later, Harrison went to the dry cleaning business where she worked and she discovered defendant's vehicle parked in front of the building. Some hours later, at

---

[1] Defendant's conviction arose under former MCL 750.77, as amended by 1998 PA 312. The statute has since been amended. See 2012 PA 533.

approximately 1:00 p.m., Harrison heard a "big boom" at the back door. When she opened the door she could smell gasoline, she saw a gasoline can on the ground, and she saw that gasoline had been splattered over the back of the door. Forensic analysis of the liquid later confirmed the substance to be gasoline. When she went outside into the parking lot, Harrison also saw defendant at the scene. Specifically, she saw him "trotting" toward his vehicle, and then he drove away. Later that day, Harrison found a butcher knife stuck in her bedroom window.

Defendant's conduct toward Harrison was not the first time that he had employed arson against a former romantic partner and, relying on MRE 404(b), the prosecutor presented evidence of defendant's past criminal conduct. In particular, in 1987, defendant pled guilty to a charge of arson in connection with his attempt to burn a house belonging to Betty Tucker, a woman who had at that time just recently ended a dating relationship with defendant. At the present trial, relying on MRE 804(b)(1), the prosecutor introduced Tucker's preliminary examination testimony relating to the 1987 proceedings. Tucker testified that she and defendant had an argument on June 10, 1986, and that 20 minutes after defendant left the house, Tucker noticed a fire. Preliminary examination testimony relating to the 1986 arson was also presented from defendant's sister, Michelle Smith, who stated that defendant told her he was not happy that his relationship with Tucker ended "so he told [Smith] he set the fire because he was going to kill [Tucker]." Officer Peter Quick, a police officer involved with investigating the 1986 arson, testified in person at the present trial. He explained that he responded to the incident at Tucker's house where he found a gasoline can and a broken basement window. It appeared that the gasoline had been poured through the broken window.

As noted, in the present case, the jury convicted defendant of preparation to burn and aggravated stalking. Defendant was sentenced as previously set forth. He now appeals to this Court as of right.

Defendant first contests the admission of Tucker's and Smith's preliminary examination testimony relating to the 1986 arson. In particular, defendant challenges the trial court's finding of due diligence under MRE 804(a)(5) with respect to the prosecutor's efforts to locate Smith and Tucker for trial. Defendant also maintains that the admission of the preliminary examination testimony violated his right to confrontation.

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995). An abuse of discretion is found when the trial court "chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Whether the prosecutor exercised due diligence to secure witness testimony involves a finding of fact that will not be set aside absent clear error. *Briseno*, 211 Mich App at 14; MCR 2.613(C). A finding is clearly erroneous if it leaves this Court with a "definite and firm conviction that a mistake has been made." *People v McSwain*, 259 Mich App 654, 682; 676 NW2d 236 (2003) (citation omitted).

Generally, hearsay—i.e., an out-of-court statement offered to prove the truth of the matter asserted—is not admissible. MRE 801(c); MRE 802. However, MRE 804(b)(1) provides that former testimony of a declarant, "given as a witness at another hearing of the same or a different proceedings," is not excluded by the hearsay rule if the declarant is "unavailable as a witness"

and "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Among other reasons, a declarant is unavailable if the declarant

> is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown. [MRE 804(a)(5).]

The test for unavailability as described in MRE 804(a)(5) is, looking at the facts and circumstances of each case, whether the proponent "made a diligent good-faith effort in [his or her] attempt to locate a witness for trial." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). This test is "one of reasonableness," which means that this Court examines whether good-faith efforts were made as opposed to whether more stringent efforts would have been successful. *People v James (After Remand)*, 192 Mich App 568, 571; 481 NW2d 715 (1992).

In this case, the trial court did not clearly err in finding that the prosecutor made a reasonable, diligent, and good-faith effort to locate the witnesses. The prosecutor intended to use defendant's 1986 arson as other-acts evidence. Although the prosecutor had been generally aware of defendant's prior arson since the beginning of the case, she did not receive the case file relating to the 1986 arson until the week before trial. Upon finding a preliminary examination transcript with the witnesses' information in the file, the prosecutor and a detective searched social security records, Michigan Secretary of State records, police records, obituaries dating back to 1986, and Facebook. They also called a telephone number contained in the old records, but the number now belonged to an architectural firm. Despite these efforts, they were ultimately unsuccessful in locating Tucker or Smith to testify.

In suggesting that these efforts were insufficient, defendant emphasizes that the prosecutor did not begin searching for Tucker and Smith until three days before trial. He maintains the prosecutor's efforts at that time were too little too late, and he compares the present facts to those in three cases: *People v Dye*, 431 Mich 58, 67-68; 427 NW2d 501 (1998); *Bean*, 457 Mich at 685, 689; and *James (After Remand)*, 192 Mich App at 572. After reviewing these cases, we find the present case distinguishable. In those cases, the witnesses in question were res gestae witnesses of whom the prosecutor had long known yet failed to maintain contact with and/or there was ample available information which the police failed to utilize to locate the witnesses.[2] In comparison, the witnesses in this case testified in a completely unrelated

---

[2] See, e.g., *Dye*, 431 Mich at 67-68 (determining that the prosecutor did not show due diligence where, after a mistrial, the prosecutor made no effort to re-locate witnesses, who were also accomplices to the crime, "even though the prosecution knew that the witnesses were needed, they had expressed an intention to leave the state, and had incentives to go into hiding"); *Bean*, 457 Mich at 685, 689 (concluding that police efforts involving phone calls and visits to the witness's house were not indicative of due diligence when police had reason to believe the witness moved out of state but did not pursue other information, including the possibility of contacting known relatives and governmental agencies); *James (After Remand)*, 192 Mich App at 572 (finding a lack of due diligence when, despite knowing of a witness, there was no

preliminary examination more than 25 years before defendant's current trial. The prosecutor and police had no reason, and certainly no obligation, to remain in contact with Tucker or Smith in the more than 25 years leading up defendant's current trial. Instead, as soon as the prosecutor obtained the relevant court file, she followed the relatively minimal leads she had to find these witnesses, including searches based on dates of birth and a telephone number from the police report, but no efforts were successful and we fail to see what additional reasonable efforts the prosecution should have taken. Accordingly, the trial court's finding of due diligence was not clearly erroneous, and the trial court did not abuse its discretion by admitting the former testimony under MRE 804(b)(1). *Briseno*, 211 Mich App at 14.

To the extent defendant also maintains that the admission of this former testimony violated his right to confrontation, his argument is without merit. Use of former testimony does not violate a defendant's right to confrontation provided that the witness is unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine the witness. *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). In this case, as discussed, Tucker and Smith were unavailable to testify at trial. Moreover, defendant had an opportunity to cross-examine these witnesses at the previous preliminary examination. Indeed, on appeal, defendant does not dispute that he had a previous opportunity for cross-examination; rather, he maintains this opportunity did not provide him with a chance to "fully" cross-examine these witnesses because the "tactics and requirements" at a preliminary examination differ from those at trial. Contrary to defendant's arguments, while there are certainly differences between a preliminary examination and a trial, a preliminary examination nonetheless affords a defendant an opportunity for effective cross-examination. See *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998). The Confrontation Clause requires nothing more. See *United States v Owens*, 484 US 554, 559; 108 S Ct 838, 842; 98 L Ed 2d 951 (1988) ("[T]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (citation omitted)). In sum, because the witnesses were unavailable for trial and defendant had a prior opportunity for cross-examination, the admission of the former testimony at trial did not violate defendant's right of confrontation. See *Bennett*, 290 Mich App at 481.

Next, defendant argues that the trial court abused its discretion by admitting other-acts evidence relating to the 1986 arson under MRE 404(b). Specifically, defendant emphasizes that the 1986 arson occurred almost 30 years ago. He maintains that the other-acts evidence was improperly admitted as character evidence, that it was irrelevant, and that any probative value was substantially outweighed by unfair prejudice.

We review a trial court's decision to admit or exclude evidence for a clear abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). An abuse of discretion is found when the trial court "chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

---

evidence the prosecutor had any contact with the witness for almost 3½ years between the time of the preliminary examination and the time of trial).

Evidence of crimes, wrongs, or other acts is inadmissible to show a defendant's propensity to act in conformity therewith. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). Other-acts evidence, however, may be admissible under MRE 404(b) for another purpose, such as proof of intent, scheme, plan or system in doing an act, or identity. MRE 404(b); *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Efforts to introduce evidence under MRE 404(b) are evaluated under a four-part standard:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

The prosecutor bears the burden of showing that the evidence is relevant to a proper purpose and is not being offered to prove defendant's character or criminal propensity. *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevance requires both materiality and probative value. *Crawford*, 458 Mich 388. "Different theories of relevance require different degrees of similarity between past acts and the charged offense to warrant admission." *Mardlin*, 487 Mich at 622. For example, evidence is relevant to show intent when the other acts are "of the same general category as the charged crime." *VanderVliet*, 444 Mich at 79-80.

In this case, the trial court did not abuse its discretion in allowing the prosecutor to introduce evidence relating to defendant's arson in 1986. First, the prosecutor offered the testimony relating to the 1986 arson for a proper purpose listed in MRE 404(b), namely, to demonstrate defendant's identity as the arsonist in this case and to establish his intent. The trial court admitted the evidence based on the conclusion that it was relevant to defendant's intent.

Second, in terms of relevance, the evidence relating to the 1986 arson was relevant to defendant's intent. Intent was a material issue because, by pleading not guilty, defendant placed all elements of preparation to burn at issue, including the requirement that he have the intent "to willfully and maliciously set fire to or burn the building." MCL 750.77(1)(d)(*i*), as amended 1998 PA 312. See also *Crawford*, 458 Mich at 389. Indeed, given that no fire was actually started at Harrison's workplace, the question of defendant's intent to burn the building was an important one at trial, and the prosecutor specified when arguing for the admission of this evidence that it would be relevant to responding to claims by defendant that he did not intend to burn the building. In short, given defendant's not guilty plea and his assertions that there was no intent to burn the building, there can be no question that intent was a material issue.

Further, the evidence relating to the 1986 arson had significant probative value in regard to defendant's intent in the present case. That is, the prior act and the charged crime were obviously of the "same general category." In both instances, the victim of defendant's wrongdoing was a woman with whom defendant had recently ended a romantic relationship. In both cases, defendant expressed a desire to kill the victim after the relationship ended, and in

both cases defendant made use of gasoline in his efforts to retaliate against the victim by pouring gasoline on a building occupied by the victim. Given these marked similarities, evidence relating to the 1986 arson was logically relevant to defendant's intent in the present case.[3]

Third, the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. All relevant evidence is prejudicial to some extent, and its admission is not unfair merely because it is damaging to defendant's case. *People v Murphy (On Remand)*, 282 Mich App 571, 582-583; 766 NW2d 303 (2009). Instead, evidence may be considered unfairly prejudicial only if the evidence "inject[s] considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (citation and quotation omitted). Evidence is also unfairly prejudicial if there exists a danger that the jury gave marginally probative evidence undue or preemptive weight. *Crawford*, 458 Mich at 398.

Defendant's claim of undue prejudice in this case relates to the fact that the 1986 arson was committed approximately 27 years before the charged crime. Relevant to defendant's argument, "[a]lthough there is no time limit applicable to the admissibility of the acts evidence," the remoteness in time between the charged conduct and the previous acts may, in some cases, limit the logical relevance of the prior acts. *People v Yost*, 278 Mich App 341, 405; 749 NW2d 753 (2008). This is not true, however, when, despite a large time gap, there remains a high degree of similarity between the incidents. See *People v Knapp*, 244 Mich App 361, 380; 624 NW2d 227 (2001) (holding 20-year gap did not lessen prior acts high probative value where acts "mirrored" one another). In such circumstances, the remoteness of the previous act "only affects the weight of the evidence rather than its admissibility." *People v McGhee*, 268 Mich App 600, 611-612; 709 NW2d 595 (2005).

---

[3] The record indicates that the trial court initially admitted the evidence to show intent but later, it instructed the jury that the evidence could be used to show whether defendant acted purposefully, whether there was a common plan or scheme, or as proof of identity. Considering the startling similarity between the present crime and the arson in 1986, beyond the issue of intent, we note that the 1986 arson evidences a common plan or scheme because the two crimes share a "concurrence of common features" such that the acts "are naturally explained as manifestations of a general plan." *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002). Therefore, the other-acts evidence was logically relevant to show common plan or scheme. Similarly, the acts "were sufficiently alike to support an inference of criminal intent," rather than a possibility of accident or mistake. See *Mardlin*, 487 Mich at 623-624. Whether the acts possessed a "special quality" that tends to prove defendant's identity poses a somewhat closer question, but given the striking similarity between defendant's conduct in 1986 and his conduct toward Harrison, we are persuaded that his efforts to harm former girlfriends through the use of gasoline may be considered "so unusual and distinctive as to be like a signature." See *People v Golochowicz*, 413 Mich 298, 310; 319 NW2d 518 (1982); *People v Waclawski*, 286 Mich App 634, 674; 780 NW2d 321 (2009). Consequently, the trial court did not abuse its discretion in instructing the jury on these purposes.

Consequently, in this case, despite the passage of approximately 27 years, the fact that defendant had committed an incredibly similar act of arson in the past against a former girlfriend makes it more probable that defendant intended to burn the building in the present case.[4]  There is no indication that evidence of the prior act was likely to inject considerations extraneous to the merits of the case, *Pickens*, 446 Mich at 337, or was given undue or preemptive weight by the jury, *Crawford*, 458 Mich at 398.  Moreover, the trial court provided the jury with two limiting instructions concerning this evidence.  A cautionary instruction may limit the potential for undue prejudice, *Murphy (On Remand)*, 282 Mich App at 583, and jurors are presumed to follow their instructions, *Waclawski*, 286 Mich App at 674.  On the whole, the trial court did not abuse its discretion by admitting the other-acts evidence.

Lastly, defendant argues that he is entitled to resentencing.  In particular, defendant maintains that the trial court failed to articulate substantial and compelling reasons for its departure from the recommended minimum sentencing range under the legislative guidelines.

Absent substantial and compelling reasons for a departure, a sentencing court is required to impose a minimum sentence within the recommended minimum sentencing range calculated under the legislative guidelines.  MCL 769.34(3); *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003).  Substantial and compelling reasons are those which "'keenly' or 'irresistibly' grab our attention" and are of "considerable worth" in deciding the length of a sentence.  *Babcock*, 469 Mich at 257 (citation omitted).  Substantial and compelling reasons are said to "exist only in exceptional cases."  *Id.*  Moreover, only factors which are "objective and verifiable" may be used to judge whether substantial and compelling reasons for departure exist. *Id.*

On appeal, we review the existence or nonexistence of a reason given for departure for clear error.  *Id.* at 255.  The conclusion that a reason is objective and verifiable is reviewed as a matter of law.  *Id.*  "Whether the reasons given are substantial and compelling enough to justify the departure is reviewed for an abuse of discretion, as is the amount of the departure." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008).  "A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Id.*

In this case, the trial court departed from the sentencing guidelines because it determined that "the sentencing guidelines substantially and remarkably understate the enormous seriousness of the defendant's criminality," and specifically, "defendant's continued pattern of using arson of buildings as a reaction to people who reject his affections in a dangerous, dangerous manner, unswayed by . . . over 20 years of incarceration, less than two years after being paroled, or less than three years after being paroled, the defendant engages in similar conduct in the matter which

---

[4] Indeed, while the jury was not advised of the time defendant spent in prison, we note that, although 27 years elapsed between the two events, defendant spent most of those years in prison and he was not discharged until December of 2010.  In other words, while defendant's 1986 arson may have happened long ago, he committed a remarkably similar act within two years of his release from prison.  In these circumstances, we cannot see that the passage of time lessened the evidence's probative value.

give[s] rise to the instant conviction." The trial court specified that the sentencing guidelines did not account for defendant's "intentional, reckless, disregard of human life and of property of others and the endangerment of others that this defendant's demonstrated record of arson reflects." Given defendant's conduct and his lack of rehabilitation, that trial court concluded that defendant was "a very dangerous person" and that "it is a small miracle that he has not killed someone already." In light of these substantial and compelling reasons, the trial court determined that it would be "more accurate" to sentence defendant at the highest end for a class D offense; that, is in the range of 43 to 152 months, and the trial court accordingly set defendant's minimum sentence at 152 months. See MCL 777.21(3); MCL 777.65.

On appeal, defendant contests whether the trial court offered substantial and compelling reasons for departure. First, he contends that the trial court relied on subjective beliefs when it determined defendant to be "very dangerous" and noted that it was "a small miracle that he has not killed someone already." This argument lacks merit.

It is true that, a trial court's opinion on a defendant's general criminal propensity may not by itself be an objective and verifiable factor. *People v Horn*, 279 Mich App 31, 44; 755 NW2d 212 (2008). But, "objective and verifiable factors underlying this belief—such as repeated offenses and failures at rehabilitation—constitute an acceptable justification for an upward departure." *Id.* at 44-45. For example, a defendant's criminal history, the failure of prison time to deter the defendant from criminal behavior, and a concern for the protection of society have been found to be valid justifications for departure. *People v Solmonson*, 261 Mich App 657, 671; 683 NW2d 761 (2004).

In this case, taken in context, the trial court's conclusion that defendant was a "very dangerous" person, who was lucky not to have killed someone, was rooted in objective and verifiable factors, including defendant's lack of rehabilitation despite more than 20 years' incarceration and the startling pattern of his crimes against former girlfriends. There is no merit to defendant's assertion that the trial court departed based on a subjective view of defendant's criminality.

On appeal, defendant also argues that his prior record was already accounted for in the sentencing guidelines, specifically under prior record variable (PRV) 1 and PRV 2. Relevant to this assertion, under MCL 769.34(3)(b), a departure may not be based "on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given disproportionate weight." When relying on the defendant's prior record as a substantial and compelling reason for departure, the trial court must articulate how the defendant's prior record received inadequate weight within the sentencing guidelines. *People v Hornsby*, 251 Mich App 462, 474; 650 NW2d 700 (2002). The trial court did so in this case, plainly detailing, in light of defendant's lack of rehabilitation and his striking pattern of conduct, the reasons why the extent of defendant's criminal history was not adequately accounted for by the sentencing guideline range; thus, this argument is without merit.

Finally, we find that the reasons articulated by the trial court "keenly" or "irresistibly" grab the court's attention and are "of considerable worth" in determining defendant's sentence.

*Smith*, 482 Mich at 299. Given defendant's deliberate pattern of conduct, and notably the fact that he committed the instant offense so soon after his release from prison, this case is certainly an "exceptional case." *Babcock*, 469 Mich at 257. For these reasons, we find that the trial court did not abuse its discretion by finding substantial and compelling reasons to depart from the sentencing guidelines and to impose a sentence of 152 months' to 50 years' imprisonment.

Affirmed.


/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra