# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 12, 2016

v

DEMARCUS CORNELLIUS FINLEY,

Defendant-Appellant.

No. 323661
Kalamazoo Circuit Court
LC No. 2013-001293-FC

Before: BOONSTRA, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of first-degree murder, MCL 750.316; felon in possession of a firearm, MCL 750.224f; two counts of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and possession with intent to deliver marijuana, MCL 333.7401(2)(d)(iii). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life imprisonment for the murder conviction; 5 to 15 years' imprisonment for the felon in possession of a firearm and possession with intent to deliver marijuana convictions; and two years' imprisonment for the felony-firearm convictions. The judgment of sentence indicates that defendant's felony-firearm sentences are concurrent and precede the other three sentences, which are concurrent. We affirm defendant's convictions, but remand for correction of the judgment of sentence.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise out of the murder of Lionel Lopez on August 23, 2013 near the intersection of Stockbridge Avenue and Race Street in Kalamazoo, Michigan. Witnesses testified to a fight involving several people at that location. Vianka Walton and Jacinta Gallegos, the victim's brother and niece, respectively, testified that the fight began when one of the men walking with defendant threw a beer can through the window of Walton's car, striking Gallegos in the mouth.[1] Walton stopped her car and Lopez began fighting one of the men accompanying defendant. Walton testified that two other men accompanying defendant joined the fight.

---

[1] Although neither Gallegos or Walton clarified this point, this Court assumes from their lack of testimony concerning broken glass or anything of that nature that the window was open.

-1-

Gallegos also joined the altercation. Walton testified that defendant did not join the fight, but that she saw defendant walk over to the fight and pull a gun from his pants. He put the gun to Lopez's neck and shot Lopez. Gallegos also testified that she saw defendant walking towards the fight. Gallegos heard a gunshot, and turned to see Lopez lying on the ground, blood rushing from his neck. Gallegos heard Walton screaming that "it was Dreads, it was Dreads." Both Walton and Gallegos testified that defendant was wearing a red T-shirt and black shorts. Jessica Moreno, who witnessed the shooting from her car, testified that the shooter had long hair that was in either braids or dreadlocks, although she described the shooter as wearing a white t-shirt. Anna Brabant, who witnessed the fight from her apartment window, heard a gunshot and testified that the person who fired the gun was wearing a red shirt and appeared to African-American, although she did not recall anything unique about his hair.

Walton testified that she knew defendant because of her "kid's father['s] sister." Gallegos testified that defendant was her "aunt's baby daddy sister's baby daddy." Walton and Gallegos knew that defendant had a twin, whose name was Demetrius. Walton testified that defendant and Demetrius looked alike but that Demetrius "just don't have hair." Demetrius, whom Walton had seen a couple days earlier, had a "fade" haircut, i.e., short hair. Gallegos testified that defendant and Demetrius "kind of, [but] not really" looked like each other. The big difference between them was that Demetrius had a fade haircut and defendant had dreadlocks. According to Walton, defendant's nickname on the street was "Dreads."

Sergeant Anthony Morgan testified that he learned approximately 30 minutes after the dispatch call that defendant was a possible suspect and that a possible location for defendant was an apartment at 530 Denway. When Morgan and Officer Joseph Hutson arrived at the apartment, which was a 5- to 10-minute drive from the crime scene, Byron Daniels, defendant's stepfather, informed them that defendant had just arrived. Morgan found defendant in a bedroom, and it appeared that defendant was going to leave the apartment through a window. Defendant was wearing a pair of black shorts underneath a pair of jeans. In a search of the apartment, Hutson found a .38-caliber revolver containing one fired cartridge and several unfired cartridges. When defendant was arrested for Lopez's murder, 49 grams of marijuana were found on him.

Dr. Michael Markey, the pathologist who performed an autopsy on Lopez, testified that Lopez had suffered one gunshot wound in the "left facial, upper neck region," where the bullet entered the left side of the face and travelled through to the right shoulder, piercing the larynx, thyroid, and jugular vein. Although the bullet recovered from Lopez's shoulder lacked "individual characteristics," and Jeff Crump, an expert in firearms identification, could not determine whether the bullet fired at the victim had been fired from the revolver located in defendant's apartment, Crump could not eliminate the possibility that the revolver had fired the bullet. The bullet had the same "class characteristics" as test shots from the revolver. In addition, the bullet was the same type of ammunition as the unfired cartridges in the revolver. Detective Gary Gaudard testified that, according to the report he received from the Michigan State Police, a match was found between defendant's DNA and DNA from a swab of the revolver. Gaudard also testified that Demetrius, who had advised a detective that he was at work at the time of the killing and who had a fade haircut, was eliminated as a suspect in the murder of Lopez.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that his convictions for first-degree murder, felon in possession of a firearm, and felony-firearm are not supported by sufficient evidence. Specifically, he claims that because only one person, Vianka Walton, identified him as the shooter, and her testimony was not meaningfully or significantly corroborated by any forensic evidence, and because the evidence showed that he had a twin, the evidence was insufficient for the jury to find that he was the person who shot Lopez. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). We view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt. *Id*.

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010), lv den 489 Mich 897 (2011). The elements of felon in possession of a firearm are (1) the defendant possessed a firearm, (2) the defendant was convicted of a prior specified felony, (3) less than five years have passed since the defendant successfully completed probation or parole, completed a term of imprisonment, and paid all fines with regard to the underlying felony, and (4) the defendant's right to possess a firearm has not been restored. M Crim JI 11.38a.[2] The elements of felony-firearm are that "the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Defendant does not claim that the prosecutor failed to present evidence that the above offenses were committed. Rather, defendant claims that the evidence was insufficient for the jury to find beyond a reasonable doubt that he was the person who shot Lopez. Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 365; 749 NW2d 753 (2008).

Two eyewitnesses (Walton and Gallegos) who were familiar with both defendant and his twin brother identified defendant as the person who had shot Lopez. Further, although there were some minor discrepancies between Moreno's and Brabant's testimony, Moreno did testify that the shooter had long hair that was in either braids or dreadlocks. Additionally, when police arrived at defendant's home, his stepfather told them that defendant had just arrived, and it appeared to Morgan that defendant planned to leave through a window. Evidence of flight, including running from the police, may indicate a consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). A gun that fired the same type of bullet that killed Lopez was found in defendant's room with one fired cartridge. Gaudard also testified that Demetrius was eliminated as a suspect in the investigation.

---

[2] "The prosecutor must prove that the defendant's right to possess a firearm has not been restored only if the defendant produces some evidence that his right has been restored." *People v Perkins*, 262 Mich App 267, 271; 686 NW2d 237 (2004), abrogated on other grounds *People v Smith-Anthony*, 494 Mich 669 (2013).

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the prosecution proved beyond a reasonable doubt that defendant was the person who shot Lopez. *Cline*, 276 Mich App at 642. The jury could thus necessarily find that defendant possessed a firearm during the commission of this felony. *Avant*, 235 Mich App at 505. The parties conceded that defendant had a prior felony conviction that made it illegal for him to carry a firearm. Therefore, defendant's convictions for first-degree murder, felon in possession of a firearm, and felony-firearm are supported by sufficient evidence.

## II. ADMISSION OF PHOTOGRAPH

Defendant next argues that the trial court erred when it admitted the prosecution's trial exhibit 46, a picture depicting the gunshot wound to Lopez's head. We disagree.

We review a trial court's evidentiary decisions for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. at 217.

Generally, relevant evidence is admissible. MRE 402; *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. When a defendant pleads not guilty, the prosecutor must prove all elements of the offense beyond a reasonable doubt, regardless whether the defendant specifically disputes or offers to stipulate to any of the elements. *People v Mills*, 450 Mich 61, 69-70; 537 NW2d 909 (1995). "Thus, the prosecutor may offer all relevant evidence, subject to MRE 403, on every element." *Id.* at 71. Photographs are not excludable simply because a witness can testify to the information contained in them. *Id*. at 76. Photographs may be used to corroborate a witness's testimony. *Id*. at 72-73, 76.

Because defendant was charged with murder and because defendant pleaded not guilty, the prosecutor had to prove beyond a reasonable doubt that defendant killed Lopez. See *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Exhibit 46 had a tendency to make the existence of the fact that Lopez was killed more probable. MRE 401. Additionally, exhibit 46 corroborated the testimony of Walton, who testified that defendant put a gun to Lopez's neck and shot Lopez, and of Moreno, who testified that the man with the gun shot Lopez. Further, exhibit 46 clearly showed the location of the gunshot wound. The location of the wound was relevant to whether defendant acted with premeditation. See *People v Berry (On Remand)*, 198 Mich App 123, 128; 497 NW2d 202 (1993). Exhibit 46 was relevant.

Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. All relevant evidence is prejudicial to some extent, *People v Murphy (On Remand)*, 282 Mich App 571, 582; 766 NW2d 303 (2009), but it is only evidence that is unfairly prejudicial that should be excluded, *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Gruesomeness alone need not result in exclusion. *Mills*, 450 Mich at 76.

Exhibit 46 is arguably gruesome; it is a color photograph that shows a gunshot wound to the left side of Lopez's face and there is some blood around the wound. However, after reviewing the photograph, we agree with the trial court that the exhibit is not "excessively graphic" or "so shocking" as to shock the jury's conscious or inflame its passion. It is not beyond what one would expect to see in a murder trial where the victim was shot in the neck and face area. There was no danger that the jury would give exhibit 46 undue or preemptive weight, nor was it inequitable to allow the prosecutor to use it. *Blackston*, 481 Mich at 462. The trial court's decision that the probative value of exhibit 46 was not substantially outweighed by the danger of unfair prejudice fell within the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217. Therefore, the trial court did not abuse its discretion in admitting exhibit 46.

## III. PROSECUTORIAL ERROR[3]

Defendant argues that the prosecutor erred when, during closing argument, he compared defense counsel to a magician, who waves a hand in the air to distract the audience from seeing the magician pull a rabbit out of a hat. Because defendant made no objection to the prosecution's statements at trial, we review this unpreserved claim for plain error affecting substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

The test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009). The prosecution may not suggest that defense counsel is intentionally attempting to mislead the jury. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). The prosecution also may not shift the burden of proof. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). The prosecution's remarks must be considered on a case-by-case basis and in light of the defense arguments. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). An otherwise improper remark by the prosecution may not rise to an error requiring reversal when the prosecution is responding to the defense counsel's argument. *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).

Here, defendant alleges that the prosecution erred in making the following statement:

Ask yourself why? How could this have happened? Where is the receipt for Vianka Walton's Western Union transaction? How come Lieutenant Crump used the phrase consistent with? The Defense has given you questions; I am giving you answers.

---

[3] As this Court recently noted in *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015), although the term "prosecutorial misconduct" has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " Defendant expressly presents a claim of prosecutorial error.

He says that he doesn't want you to make my case for me, I don't want you to do that either; but I don't want you to make his.

He doesn't want you to make my case, but he wants to throw out all these questions that have nothing to do with the elements of this case.

Was there a four shot -- five shot or a six shot gun? Not an element.

DVR's, not an element.

This case is about the evidence that you have, not the evidence that you don't.

Mr. Champion [defense counsel] is exactly right; I bear the burden in this case, beyond a reasonable doubt. He doesn't have to do anything and you couldn't hold it against him if he didn't.

But he did. He asked my witnesses questions. If there was something on Officer's Hutson's MVR that he thought was important, don't you think that he would have added that to his questioning?

Sometimes a magician, when they want to do something great with his hand will waive [sic] this hand in the air so you don't see them pull the rabbit out of the hat, the card out of the sleeve -- whatever -- that is what he is doing. He is not talking about the elements. He is not talking about premeditation, deliberation, intent. He is talking about which way the car went when they pulled out of the driveway or where is this DVR[4] or where is that recording or why didn't you hear three different witnesses say that the Defendant made a statement to the police that he wasn't at the scene instead of just one. That is why he is not talking about the evidence. That is why he is not talking about the elements.

One of the things he said that it is the Prosecutor's job to prove the case. Maybe in the friendliest of terms that is true, but it is not -- I don't think it is my job to prove the case; it is my job to prove the elements of the case.

The challenged remark, looked at in the abstract, could be interpreted as a suggestion that defense counsel was intentionally attempting to mislead the jury. However, the remark, which was made in rebuttal during closing argument, was a response to defense counsel's argument that the police had failed to conduct a thorough investigation and that evidence had been withheld from the jury. The prosecution told the jury that the questions raised by defense counsel in his closing argument did not affect whether the evidence that was presented during trial established the elements of the charged crimes. And, throughout the remainder of its closing rebuttal

---

[4] The term "DVR" or "MVR" appears to refer to video recordings from cameras affixed to the vehicles of police officers who responded to the altercation and shooting.

argument, the prosecution argued that all the evidence proved beyond a reasonable doubt that defendant was the person who shot Lopez. Because the prosecution's remark was in response to defense counsel's closing argument, the remark was not improper. *Thomas*, 260 Mich App at 454; *Kennebrew*, 220 Mich App at 607. Additionally, the remark did not shift the burden of proof. We find no error requiring reversal in the prosecution's statement.

Additionally, even if the prosecution's statements were improper, a timely objection and curative instruction could have alleviated any prejudicial effect. See *Unger*, 278 Mich App at 237. The trial court, following closing arguments, instructed the jury that defendant was presumed innocent; defendant was not required to prove his innocence, the prosecutor had the burden of proof to prove each element of the charged crimes beyond a reasonable doubt; it could only consider the evidence that was presented; and the lawyers' statements were not evidence. Jurors are presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Any error in the prosecution's statements was thus harmless.

## IV. CONSECUTIVE SENTENCING

Defendant argues that, because the predicate felonies for the felony-firearm charges were murder and felon in possession of a firearm, the trial court erred when it ordered that his sentence for possession with intent to deliver marijuana be consecutive to his felony-firearm sentences. The prosecution concedes this error, and we agree. See *People v Clark*, 463 Mich 459, 463-464; 619 NW2d 538 (2000). We remand so that the judgment of sentence can be corrected to reflect that defendant's sentence for possession with intent to deliver marijuana be concurrent to his sentences for felony-firearm.

## V. DEFENDANT'S STANDARD 4[5] BRIEF

In his Standard 4 brief, defendant argues that the trial court erred when it failed to grant him a new trial after a juror revealed that, upon hearing Lopez's street name during testimony, he realized that he was familiar with Lopez. However, because defense counsel expressed satisfaction with the trial court's decision to excuse Lopez from the jury, this claim of error is waived. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011); *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). However, we consider this claim in the context of defendant's claim of ineffective assistance of counsel.

Defendant argues that defense counsel was ineffective for failing to move for a mistrial after the juror's disclosure. We disagree. To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability

---

[5] A supplemental brief filed by a defendant in propria persona in accordance with Administrative Order 2004-6.

that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008).[6]

A defendant has a constitutional right to be tried by an impartial jury. *People v Rose*, 289 Mich App 499, 529; 808 NW2d 301 (2010). "A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010) (quotation omitted). A mistrial is appropriate only when the prejudice to the defendant can be removed in no other way. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). Once the juror disclosed that he was familiar with Lopez, the prejudice to defendant could be removed in a way other than the declaration of a mistrial: the juror could be, and was, excused from the jury. Nothing in the record indicates that the juror's familiarity with Lopez rendered the jurors who decided defendant's guilt impartial. There is no indication that the juror informed other jurors of his familiarity with Lopez, nor is there any indication that the jurors ever discussed the case before deliberations began. The trial court instructed the jurors that they were not to discuss the case with each other until it was time for them to decide the case. Jurors are presumed to follow their instructions. *Abraham*, 256 Mich App at 279. Because any prejudice to defendant resulting from the juror's familiarity with Lopez was removed by excusing the juror from the jury, a motion for a mistrial would have been futile. Defense counsel was not ineffective for failing to make such a futile motion. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Next, defendant argues that defense counsel was ineffective for failing to adequately investigate his case. Specifically, defendant claims that had defense counsel performed an adequate investigation, counsel would have discovered surveillance video that contradicted the testimony of Moreno regarding the man who shot Lopez. Because the record does not indicate that there was any relevant video surveillance on August 23, 2013, defendant has failed to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant also argues that defense counsel was ineffective because he failed to present expert testimony regarding the reliability of eyewitness identification. Regardless whether such testimony is admissible under MRE 702, the failure to call a witness only constitutes ineffective assistance of counsel if it deprived the defendant of a substantial defense, *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), which is one that might have made a difference in the outcome of trial, *People v Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). The record contains no evidence regarding how an expert in the reliability of eyewitness identification would have testified at trial, much less does it establish that expert testimony would have been favorable to defendant. Thus, defendant has not shown that defense counsel's failure to call an expert witness deprived him of a substantial defense.

---

[6] Because defendant did not move for a new trial or an evidentiary hearing based on claims of ineffective assistance of counsel, our review of defendant's ineffective assistance claims is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

Defendant next argues that Gallegos's testimony that defendant was the person who shot Lopez was based on inadmissible hearsay. We review this unpreserved claim of evidentiary error for plain error affecting substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

" 'Hearsay' is a statement, other than the one made by the defendant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(d). Hearsay is not admissible except as provided by the rules of evidence. MRE 802. Because Gallegos's testimony indicates that she did not actually see defendant shoot Lopez, one could reasonably conclude that Gallegos's knowledge regarding who killed Lopez was based on an out-of-court statement. And, there was evidence that Gallegos heard an out-of-court statement from Walton that it was defendant who had shot Lopez. Gallegos testified that, after she heard the gunshot, she heard Walton yelling that "it was Dreads." This out-of-court statement by Walton, however, was admissible as a present sense impression, MRE 803(1); *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014), and as an excited utterance, MRE 803(2); *People Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). Further, Gallegos testified that she did not see the shooting but only heard the gunshot and turned to see that Lopez had been shot. There was no plain error. *Benton*, 294 Mich App at 202. Because Gallegos's testimony that it was defendant who had shot Lopez was not based on inadmissible hearsay, defendant's claim that defense counsel was ineffective for failing to object to Gallegos's testimony is without merit. A hearsay objection would have been futile, and counsel was not ineffective for failing to make a futile objection. *Fike*, 228 Mich App at 182.

Next, defendant argues that defense counsel was ineffective for failing to impeach Walton with a statement she allegedly made to police that, after defendant threw a beer can at her car, Lopez and defendant got into a fight and, while fighting, defendant shot Lopez. However, nothing in the record indicates that Walton did, in fact, make this statement to police. Accordingly, defendant has failed to establish the factual predicate for his claim. *Hoag*, 460 Mich at 6. Defendant's claim is without merit.

Finally, defendant argues that the trial court erred when it failed to sever the marijuana charge from the murder and weapons charges. We review this unpreserved claim for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1)." MCR 6.120(C). Even if the marijuana charge was not related to the murder and weapons charges, the trial court was not required to sever it for a separate trial, because defendant did not move to sever the marijuana charge. A trial court's obligation to sever charges only arises on the defendant's motion. *Id.* Nonetheless, under MCR 6.120(B), a trial court may sever offenses charged in a single information against a single defendant "when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." Relevant to this determination are the factors listed in MCR 6.120(B)(2), which include "the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence" and "the convenience of witnesses." Here, the potential for confusion based on the number of charges or the nature of the evidence was minimal. There were five charges against defendant. Four of the charges, the murder, felon in possession of a firearm, and felony-firearm charges were generally

based on the evidence regarding the murder of Lopez, and none of the evidence admitted at trial was of a complex nature. In additional, every witness who gave testimony that concerned the marijuana found on defendant also provided testimony that was relevant to the question whether defendant was the person who shot Lopez. Under these circumstances, the trial court did not plainly err in failing to sever the marijuana charge for a separate trial. *Carines*, 460 Mich at 763. Further, given the substantial evidence indicating that defendant was the person who shot Lopez, there is no reasonable probability that, but for defense counsel's alleged failure to move for a severance of the marijuana charge, the result of defendant's trial on the murder and weapons charges would have been different. *Uphaus (On Remand)*, 278 Mich App at 185.[7]

We affirm defendant's conviction, but remand for correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jane E. Markey

---

[7] Defendant makes no claim that he would have been acquitted of the marijuana charge had the marijuana charge been severed from the murder and weapons charges.