PEOPLE v MURPHY (ON REMAND)

Docket No. 258397. Submitted December 2, 2008, at Detroit. Decided March 3, 2009, at 9:10 a.m. Leave to appeal sought.

Bernard C. Murphy was charged in the Wayne Circuit Court with two counts of armed robbery and one count of possessing a firearm during the commission of a felony. After jury selection, counsel addressed the proposed introduction of evidence obtained during the defendant's arrest for a carjacking offense that occurred the day after the offenses in this case. The court, Deborah A. Thomas, J., ruled that the prosecution could present testimony related to shotgun shells found in the pickup that the defendant had been driving but not the shotgun or testimony regarding its discovery. Following the prosecution's interlocutory appeal, the Court of Appeals peremptorily reversed Judge Thomas's exclusion of evidence of the shotgun in an unpublished order, entered April 23, 2004 (Docket No. 255101). The case proceeded to trial before Michael M. Hathaway, J., and the jury convicted the defendant of all charges. The Court of Appeals, SCHUETTE, P.J., and BANDSTRA, J. (COOPER, J., concurring), reversed his convictions in an unpublished opinion per curiam, issued October 12, 2006 (Docket No. 258397), and remanded the case for a new trial after concluding that the defendant had entirely lacked the assistance of counsel during the prosecution's interlocutory appeal. The Supreme Court reversed the Court of Appeals' grant of a new trial for the defendant and remanded the case to that court for a new appeal. 481 Mich 919 (2008).

On remand, the Court of Appeals held:

1. Judge Thomas abused her discretion by ruling that in the absence of direct evidence linking the defendant and the shotgun, the prosecution could not introduce evidence of the shotgun at trial. The prosecution lacked direct evidence demonstrating the defendant's possession and control of the shotgun. The appropriate test, however, is not whether sufficient evidence existed to convict the defendant of constructively possessing the gun, but whether the circumstances surrounding its discovery tended to establish the defendant's connection to it. Generally, evidence is admissible if it is helpful in throwing light on any material point at

issue. The central issue in this case was whether a witness had correctly identified the defendant as one of his assailants. Evidence that a day after the robbery the defendant drove a pickup like that used in the robbery and parked it near a discarded shotgun that used shells of a caliber consistent with those found in the pickup tended to prove the defendant's identity as one of the robbers.

2. Judge Hathaway did not abuse his discretion by ruling that MRE 403 did not prohibit the admission of the evidence related to the carjacking. Although the carjacking involved a serious and entirely separate crime, the risk of unfair prejudice did not substantially outweigh the probative force of the evidence connecting the defendant to the pickup and the shotgun.

3. Judge Thomas did not clearly err by admitting the identification of the defendant a witness made after the witness requested that the participants in a lineup speak a command given during the robbery. A court evaluates the fairness of an identification procedure in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification. Evidence of a voice identification is competent if the identifying witness demonstrates certainty in the mind by testimony that is positive and unequivocal. Voice identification must be based on a peculiarity in the voice or on sufficient previous knowledge by the witness of the person's voice. The witness in this case had ample opportunity to hear and see the robber with the shotgun.

Affirmed.

EVIDENCE — CRIMINAL LAW — LINEUPS — IDENTIFICATION OF A DEFENDANT — VOICE IDENTIFICATION.

Evidence of the identification of a person by his or her voice is competent if the identifying witness demonstrates certainty in the mind by testimony that is positive and unequivocal; voice identification must be based on a peculiarity in the voice or on sufficient previous knowledge by the witness of the person's voice.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jeffrey Caminsky*, Assistant Prosecuting Attorney, for the people.

*Robin M. Lerg* for the defendant.

ON REMAND

Before: BORRELLO, P.J., and DAVIS and GLEICHER, JJ.

GLEICHER, J. A jury convicted defendant of two counts of armed robbery, MCL 750.529, and one count of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent terms of 15 to 30 years' imprisonment for the armed robbery convictions and a consecutive term of 2 years' imprisonment for the felony-firearm conviction. This Court reversed defendant's convictions and remanded for a new trial.[1] Our Supreme Court granted the prosecution's application for leave to appeal. *People v Murphy*, 477 Mich 1019 (2007). In an order dated June 25, 2008, the Supreme Court reversed this Court's decision to grant defendant a new trial and ordered this Court to instead afford defendant "a new appeal." *People v Murphy*, 481 Mich 919 (2008). We now affirm defendant's convictions.

I. UNDERLYING FACTS AND PROCEEDINGS

Defendant's convictions arise from the armed robbery of Christopher Holman and his fiancée, Tammy Isaac, on Thanksgiving morning in 2003. At defendant's preliminary examination, Holman described how, while

---

[1] On July 27, 2006, this Court issued a published opinion reversing defendant's convictions on the ground that he was denied the assistance of appellate counsel because his counsel had failed to file a brief opposing the prosecution's interlocutory appeal; this Court remanded for a new trial. The prosecution then filed a motion for reconsideration, arguing that defendant's ineffective assistance claim should fail because he did not establish prejudice. This Court vacated the July 2006 opinion and on reconsideration issued an unpublished opinion that again reversed defendant's convictions and remanded for a new trial. *People v Murphy (On Reconsideration)*, unpublished opinion per curiam of the Court of Appeals, issued October 12, 2006 (Docket No. 258397).

en route to Detroit's Thanksgiving Day parade in a Dodge Neon, the victims stopped at a traffic light. According to Holman, a black Dodge Ram pickup truck "bumped" the Neon from behind. Holman got out and walked to the rear of the car to inspect it for damage. As Holman returned to the Neon, he heard the pickup's driver inquire whether the truck had hit Holman's vehicle. Holman advised the driver that a collision had occurred but caused no discernible damage.

As Holman attempted to get into the car, he heard someone yell, "Get down on the ground now." Holman looked toward the truck and saw defendant standing behind its passenger door, pointing "[s]ome type of shotgun" at him. Holman got down on his hands and knees and produced his wallet in response to the pickup driver's demand for money. As he handed the driver money from the wallet, Holman heard defendant knock on the Neon's passenger window and yell: "Get out of the car now. Get out of the car now." Holman could not see exactly what happened, but believed that Isaac "was thrown onto the ground." When Holman turned, he observed defendant inside the Neon "going through our stuff." Holman testified that defendant stole two cell phones and Isaac's purse. After the Dodge Ram departed, Holman and Isaac drove to a state police post and reported the incident. On the basis of Holman's testimony, the district court bound defendant over for trial on the charged counts of armed robbery and felony-firearm.

Defendant's trial commenced on April 22, 2004, before Judge Deborah Thomas. After the parties selected a jury, the prosecutor and defense counsel addressed with Judge Thomas several "housekeeping matters," including "the People versus Hall issue."[2] This evidentiary matter concerned a separate case filed

---

[2] *People v Hall*, 433 Mich 573; 447 NW2d 580 (1989).

against defendant that arose from a carjacking committed on the day after Thanksgiving 2003. The prosecutor sought to introduce in defendant's armed robbery prosecution evidence obtained at the time of defendant's arrest in the carjacking case. Coincidentally, Judge Thomas had been assigned to preside over the carjacking case. By the time of defendant's armed robbery trial, Judge Thomas had dismissed the carjacking charges filed against defendant and a codefendant on the basis that inadequate evidence linked defendant to the carjacking.

This Court ultimately reversed Judge Thomas's decision to quash the carjacking charges against defendant.[3] In an unpublished opinion, this Court summarized the facts surrounding the alleged carjacking as follows:

> [T]he victim was delivering newspapers in Detroit at approximately 4:30 [a.m.] when a black pickup truck approached, someone from the truck pointed a sawed-off long gun at him and demanded that he not look in that direction, and told him to lie face down on the ground. Multiple assailants then threatened to shoot him, demanded money, searched him, and took his glasses and keys. The victim saw both the truck and his own car driving away. He called the police with his description of the truck and firearm, but he could not identify any of the assailants.[4]

During the preliminary examination conducted in the carjacking case, Detroit police sergeant Ramon Childs explained that shortly after hearing a report regarding the carjacking, he located a black Dodge Ram pickup and followed it to a gas station. As Childs watched from

---

[3] *People v Jones*, unpublished opinion per curiam of the Court of Appeals, issued November 10, 2005 (Docket Nos. 254939 and 254964).

[4] *Id.* at 1.

across the street, one of the pickup's passengers left the truck and entered the gas station. Another passenger walked to the rear of the gas station, while the other two occupants remained outside the truck, near the gas pumps. The four men got back in the pickup and began to drive away. The police stopped the pickup shortly thereafter and arrested its occupants, including defendant. The police found a live shotgun shell inside the pickup. A search at the gas station yielded a sawed-off shotgun in a dumpster behind the building and additional live shotgun shells in trash receptacles near the gas pumps. All the live shells were "caliber consistent" with the shotgun.

The prosecutor argued that Childs's testimony summarizing his observations after the carjacking was admissible against defendant at his armed robbery trial pursuant to *Hall*. Specifically, the prosecutor urged the trial court to admit "the testimony of the officer that made the observations before the gas station and at the gas station and the officers that were involved in the detention of the Black Dodge Ram Pickup and the officers that were involved in securing the evidence that I've made reference to." The prosecutor stated that he would "sanitize out" the carjacking circumstances prompting Childs's pursuit of the pickup. Defense counsel countered that Childs's testimony failed to establish that any of the men at the gas station "had a shotgun in his hand or even an object of any sort." Judge Thomas ruled that the prosecutor could present testimony related to the shotgun shells found in the pickup and the trash cans near the gas pumps, but not the shotgun or testimony regarding its discovery "because nobody gave any testimony they saw anybody taking anything behind the gas station." In her bench ruling, Judge Thomas elaborated that Childs "didn't say he saw

anybody going around the store carrying anything. If I had that, I would allow it. I don't have any of that."

On April 23, 2004, the prosecutor filed an emergency application for leave to appeal in this Court. Late that afternoon, this Court entered an order peremptorily reversing Judge Thomas's exclusion of evidence of the shotgun and remanding for further proceedings. *People v Murphy*, unpublished order of the Court of Appeals, entered April 23, 2004 (Docket No. 255101). On April 26, 2004, defense counsel informed Judge Thomas that she had not received notice of the prosecutor's appeal and planned to file a motion for reconsideration. Judge Thomas granted a stay of the proceedings, but defense counsel failed to pursue appellate relief.

In September 2004, the armed robbery case proceeded to trial before Judge Michael Hathaway, and a jury convicted defendant of all charges. Defendant filed an appeal of right, and this Court reversed his convictions because he entirely lacked the assistance of counsel during the prosecutor's interlocutory appeal. *People v Murphy (On Reconsideration)*, unpublished opinion per curiam of the Court of Appeals, issued October 12, 2006 (Docket No. 258397). Our Supreme Court thereafter reversed this Court's order granting defendant a new trial and instead held that defendant is entitled to a new appeal. The Supreme Court advised that this Court "is not bound by the law of the case doctrine" and further directed this Court to consider whether voice identification evidence was properly admitted during defendant's trial. *Murphy*, 481 Mich at 919.

## II. THE SHOTGUN EVIDENCE

Defendant contends that because no testimony directly linked him and the shotgun, Judge Thomas properly ruled the shotgun evidence and Childs's testi-

mony inadmissible. According to defendant, the prosecutor established only defendant's proximity to the shotgun and the shells, not his knowing possession and control over these items. Defendant additionally asserts that even if he had possessed the shotgun, MRE 403 would bar its admission because of the substantial danger that this evidence would confuse the issues and mislead the jury. We review for an abuse of discretion a trial court's decision whether to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review de novo whether a court rule or statute precludes the admission of evidence. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008).

In *People v Hall*, 433 Mich 573, 575; 447 NW2d 580 (1989), our Supreme Court considered whether MRE 404(b) precluded the admission of evidence regarding other crimes, wrongs, or acts that otherwise qualified as relevant and material to a defendant's guilt. The defendant in *Hall* was charged with having committed an armed robbery at a videotape rental store. The victims of the robbery testified that their assailant had been armed with a sawed-off shotgun and escaped in a rust-colored, mid-size vehicle. *Id*. at 575-577. Approximately seven months later, a witness observed the defendant standing near a dry cleaning establishment holding a large brown bag. The witness believed that the bag contained a gun and reported his suspicion to the dry cleaning store's manager. When the witness left the store, he noticed the defendant sitting in a tan or rust-colored car. *Id*. at 577. The store manager saw the defendant place the bag into the car through an open window and walk away. *Id*. at 577-578. Store personnel

summoned the police, and an officer testified that he looked into the car and observed a black plastic bag lying on the floor. Inside the bag, the officer found a large brown grocery bag containing a sawed-off shotgun. On the car's front seat, the officer found a business card for the videotape store. The trial court allowed the prosecutor to introduce evidence surrounding the defendant's arrest, including his possession of the shotgun. On appeal, the defendant contended that the introduction of the evidence violated MRE 404(b). *Id.* at 578.

The Supreme Court affirmed the defendant's conviction, holding that the trial court properly admitted the shotgun and the testimony of the witnesses who participated in supplying information used by the police to arrest the defendant:

> We hold that, as direct physical evidence of the commission of the armed robbery, the shotgun was properly admitted notwithstanding the fact that mere possession of it was a distinct criminal offense. We also hold that the testimony of the various witnesses to the circumstances surrounding the defendant's arrest was admissible to establish the defendant's possession and control of both the shotgun and a vehicle similar to the one used in the charged robbery. In both instances, admissibility is governed by MRE 401 and not, as defendant claims, by MRE 404(b). [*Id.* at 575.]

The Supreme Court reasoned that evidence of the defendant's "possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *Id.* at 580-581. In *Hall*, the Supreme Court determined that "both the gun and the testimonial evidence of defendant's possession of it and the car ... were clearly relevant to make the defendant's identity as the gunman in the charged robbery

'more probable . . . than it would be without the evidence.' " *Id.* at 582-583, quoting MRE 401.

Here, unlike in *Hall*, the prosecutor lacked direct evidence demonstrating defendant's possession and control of the weapon. However, the appropriate test is not whether sufficient evidence existed to convict defendant of constructively possessing the shotgun, but whether the circumstances surrounding the gun's discovery tended to establish defendant's connection to it. "This demand is one of simple, logical relevancy, measured by logic, common experience, and common sense, apart from legal technicalities." *People v McKinney*, 410 Mich 413, 418 n 3; 301 NW2d 824 (1981). Alternatively stated, "the general rule is that evidence 'is admissible if helpful in throwing light upon any material point in issue'." *Id.* at 419 (citation omitted). "A material fact is one that is ' "in issue" in the sense that it is within the range of litigated matters in controversy.' " *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000) (citations omitted). The central issue in controversy during defendant's armed robbery trial was whether Holman correctly identified him as one of the Thanksgiving Day assailants. Evidence that defendant drove a black Dodge Ram pickup the next day and parked it in proximity to a discarded sawed-off shotgun and with consistent caliber shells tended to prove defendant's identity as one of the assailants who had robbed Holman and Isaac on Thanksgiving Day. See *Hall*, 433 Mich at 582-583.

In this Court's previous opinion regarding precisely the same issue, we observed that

> there was evidence that Murphy was driving the truck when the police stopped it. That Murphy was driving then is circumstantial evidence that he assumed the role of driver in general. The obvious inference from stopping the

> truck both for the assault, and then to jettison contraband, is that the driver was fully involved in those actions. . . . Murphy's role as driver circumstantially links him to the crime beyond his mere presence in the truck . . . . [*People v Jones*, unpublished opinion per curiam of the Court of Appeals, issued November 10, 2005 (Docket Nos. 254939 and 254964), at 2.]

Despite Childs's failure to report seeing one of the pickup's passengers carry an object to the dumpster, the surrounding circumstances supported a reasonable inference that the black Dodge Ram containing defendant stopped at the gas station so that its occupants could dispose of evidence of their crimes, including both the shotgun and shells compatible with it. This evidence, which tended to show that defendant and his fellow passengers participated in a joint enterprise designed to dispose of the contraband, logically linked defendant to a sawed-off shotgun. Holman testified that his assailants traveled in a black Dodge Ram and possessed a sawed-off shotgun. " 'The acid test is logical relevance, and a logically relevant act is admissible even when the finding of logical relevance requires a long chain of intervening inferences.' " *People v VanderVliet*, 444 Mich 52, 61; 508 NW2d 114 (1993), quoting Imwinkelried, Uncharged Misconduct Evidence, § 2:17, pp 45-46.

Evidence that (1) defendant drove a black pickup truck involved in a recent alleged carjacking, (2) the occupants of the truck possessed live cartridges, (3) the truck stopped at a gas station where police found live cartridges in the trash cans, and (4) the police found a shotgun compatible with the cartridges behind the gas station tended to prove that defendant participated in the carjacking and knew that the shotgun was being discarded along with the shells. And both the shotgun and the black pickup truck linked defendant to the robbery of Holman and Isaac. Although circumstantial,

this evidence had a tendency to corroborate defendant's identity as a participant in the armed robbery, apart from also constituting evidence of his involvement in a carjacking. Judge Thomas's apparent ruling that direct rather than circumstantial evidence must connect defendant and the shotgun lacks legal support. " '[C]ircumstantial evidence is oftentimes stronger and more satisfactory than direct evidence.' " *People v Wolfe*, 440 Mich 508, 526; 489 NW2d 748 (1992) (citation omitted). Reasonable inferences derived from circumstantial evidence are reviewed in the same manner as those arising from direct evidence. *Id.* Accordingly, Judge Thomas abused her discretion by ruling that in the absence of direct evidence linking defendant and the shotgun, the prosecutor could not introduce the shotgun at defendant's trial.

Defendant next maintains that even if the challenged evidence satisfied the relevancy criteria set forth in *Hall*, it qualified as substantially more prejudicial than probative and should have been excluded under MRE 403. Defendant unsuccessfully raised this objection at his trial.[5] MRE 403 proscribes the admission of relevant evidence "if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphasis added.) All relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). The fact that evidence is prejudicial does not make its admission

---

[5] Defendant contends that Judge Thomas excluded the shotgun evidence on the grounds of unfair prejudice under MRE 403 as well as relevancy. Our review of the record reveals no support for that contention. Rather, Judge Thomas clearly ruled that if the prosecutor had "something else that might make it both relevant and material, then it's in."

unfair. Unfair prejudice exists only "where either 'a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect,' or 'it would be inequitable to allow the proponent of the evidence to use it.' " *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002), quoting *Mills*, 450 Mich at 75-76.

Although the carjacking-related evidence involved a serious and entirely separate crime, the risk of unfair prejudice did not substantially outweigh the probative force of the evidence, which connected defendant to the Dodge Ram and the shotgun. The record supports that the prosecutor never argued to the jury that an aspect of defendant's character, or his alleged participation in a different, uncharged crime, established his guilt in the armed robbery. Moreover, in the final instructions to the jury, Judge Hathaway provided a cautionary instruction, limiting the potential for undue prejudice. Consequently, Judge Hathaway did not abuse his discretion by ruling that the admission of evidence of the post-carjacking events on the day after Thanksgiving 2003 did not contravene MRE 403.

### III. VOICE IDENTIFICATION EVIDENCE

Defendant lastly challenges Judge Thomas's decision to admit Holman's identification of defendant. Holman identified defendant in a lineup only after requesting that members of the lineup say, "Get down on the ground now." After hearing defendant utter those words, Holman selected him from the lineup participants and identified him as the passenger with the shotgun. Defendant contends that Holman's voice identification should have been excluded because it was not based on a peculiarity in defendant's voice or on suffi-

cient knowledge about defendant's vocal characteristics. We review for clear error a trial court's factual findings regarding a motion to suppress evidence. *People v Farrow*, 461 Mich 202, 208-209; 600 NW2d 634 (1999). However, this Court reviews de novo a trial court's conclusions of law and ultimate decision regarding a motion to suppress evidence. *People v Garvin*, 235 Mich App 90, 96-97; 597 NW2d 194 (1999).

"The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). Vocal identification evidence is competent if the identifying witness demonstrates "certainty . . . in the mind . . . by testimony that is positive and unequivocal." *People v Hayes*, 126 Mich App 721, 725; 337 NW2d 905 (1983). Further, voice identification must be based on a peculiarity in the voice or on " 'sufficient previous knowledge by the witness of the person's voice.' " *People v Bozzi*, 36 Mich App 15, 19; 193 NW2d 373 (1971) (citation omitted). Holman had ample opportunity to hear and see the robber with the shotgun. We find that the totality of the circumstances, combined with Holman's certainty regarding his identification of defendant, supplied sufficient reliability of the voice identification.

Affirmed.