# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GARY PATRICK LEWIS,

        Defendant-Appellant.

UNPUBLISHED
July 21, 2016

No. 325782
Wayne Circuit Court
LC No. 14-006454-FH

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of four counts of third-degree arson, MCL 750.74, and one count of second-degree arson, MCL 750.73(1).[1] Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 17 to 30 years' imprisonment for each of his convictions. We vacate defendant's convictions and remand for a new trial.

## I. FACTS AND PROCEEDINGS

### A. PRELIMINARY EXAM

At the start of defendant's preliminary examination, the trial court asked defendant to state his full name on the record. In response, defendant stated, "I'm not talking. I don't have no attorney. This man disrespecting me. You all violating my rights. I'm through with it. I'm through with it." The trial court then stated that it had appointed lawyers for defendant on multiple occasions, that defendant had indicated his displeasure with each of the lawyers that were appointed, and that defendant had in fact grieved each of the prior counsel.

In light of this, the trial court found that defendant had "elected that he would prefer not to have a lawyer to represent him and we're going to proceed."[2] In response, defendant stated, "I

---

[1] Defendant was charged with, and acquitted of, one additional count of third-degree arson, MCL 750.74.

[2] At an earlier proceeding defendant had indicated that he wanted to represent himself, but apparently had a subsequent change of heart.

-1-

never said that." The trial court then reiterated that the preliminary examination would proceed and that defendant's former trial counsel, Brian Scherer, would act as stand-by counsel.

As the prosecution called Mollison Folson to testify, defendant stated, "I'm not going to participate in this legal bullshit." The court then warned defendant that he would be expelled from the courtroom if he continued his outburst. Defendant continued to interrupt the court while using profane language, so the trial court expelled defendant from the courtroom. After defendant was removed, the trial court told Scherer that he was free to leave as well. The court then continued with the preliminary examination, and after hearing testimony from six witnesses, the trial court held that there was sufficient probable cause to bind defendant over for trial.

## B. TRIAL

After defendant was bound over for trial, the following evidence was presented to the jury. At 10:30 a.m. on March 2, 2014, Folson observed defendant walking down Russell Street in Detroit. Folson heard defendant yelling loudly about how he had observed a white man raping several women. Folson then observed defendant walk into a vacant home located at 20527 Russell for 10 minutes. When defendant exited the home, he spoke with Folson briefly and then left. An hour later, Folson observed firemen attempting to put out a fire at 20527 Russell.

At 11:30 a.m., Raven Jackson and her husband, Christopher Goward, were loading up a van in front of their home, located at 20514 Hull in Detroit. Jackson and Goward observed defendant yelling and walking down their street. They then observed defendant enter the vacant house next-door, located at 20520 Hull. Approximately four minutes later, Jackson and Goward observed smoke coming out of 20520 Hull. The home eventually began burning and the fire spread and damaged 20514 Hull.

On the same day, Ronnie Blanton was taking pictures of a vacant house located at 20438 Hawthorne in Detroit. While he was taking pictures, Blanton observed defendant walking down Hawthorne and yelling into a cellular phone. Defendant then walked into a vacant house next door, located at 20430 Hawthorne. After defendant exited the home, Blanton observed smoke coming from the home. Blanton's coworker, David Forman, approached defendant, at which point defendant threatened to shoot Forman. Blanton asked defendant if he set the home on fire, but defendant did not respond. The fire eventually spread to 20438 Hawthorne and damaged the home.

Lieutenant Jamel Mayers and Lieutenant Dennis Richardson were dispatched to Hawthorne Street to investigate the fires. Upon arriving, Blanton provided the officers with a description of defendant. Mayers and Richardson then began to search the area for defendant. After driving around, they spotted defendant and ordered him to stop. Defendant began to flee, but Mayers and Richardson were able to apprehend him. A search of defendant's pocket revealed four cigarette lighters.

## II. ISSUES AND ANALYSIS

### A. ABSENT COUNSEL

Defendant first argues that he was denied his Sixth Amendment right to counsel when the trial court dismissed both defendant and his counsel from the courtroom during defendant's preliminary examination. As the law in Michigan currently stands, he is correct.

## A. MICHIGAN'S INTERPRETATION OF FEDERAL LAW

"The Sixth Amendment safeguards the right to counsel at all critical stages of the criminal process for an accused who faces incarceration." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004).[3] A preliminary examination is a critical stage at which a defendant has a right to counsel. *Coleman v Alabama*, 399 US 1, 9; 90 S Ct 1999; 26 L Ed 2d 387 (1970); *Duncan v Michigan*, 284 Mich App 246, 264; 774 NW2d 89 (2009), rev'd on other grounds by 486 Mich 1071 (2010). Both our Court and the Supreme Court (albeit in an order) have unequivocally stated that it "is well established that a total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal." *People v Buie*, 298 Mich App 50, 61-62; 825 NW2d 361 (2012), quoting *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005). See also *People v Arnold*, 477 Mich 852, 852-853; 720 NW2d 740 (2006). Because defendant did not have counsel[4] during the preliminary exam, which according to *Coleman* is a critical stage in the proceedings, a structural error has occurred that, according to *Buie*, *Willing* and *Arnold*, requires automatic reversal. Accordingly, we must reverse defendant's convictions and remand for a new trial.

## 2. THE CORRECT INTERPRETATION OF FEDERAL LAW

Although the principles articulated in *Buie*, *Willing* and *Arnold* appear to be absolute and thus require an automatic reversal, we express our belief that the denial of counsel at a critical stage of a criminal proceeding does not *always* require automatic reversal. Instead, when confronted with such a situation, a court must determine whether the denial of counsel at a critical stage constitutes a structural error that infects the entire proceedings, and if so, automatic

---

[3] "The Sixth Amendment right to counsel is applicable to the states through the Due Process Clause of the Fourteenth Amendment." *Williams*, 470 Mich at 641.

[4] It is possible to conclude that defendant's conduct at the preliminary exam forfeited his right to counsel, *People v Kammeraad*, 307 Mich App 98; 858 NW2d 490 (2014), but the prosecution has not made the argument. But the facts show that the trial court appointed multiple attorneys to represent defendant (all before the preliminary exam even took place), yet defendant rejected each one of them. The trial court also noted that defendant had already grieved each one of them, and reasonably determined that the same thing would occur if he continued to appoint counsel to represent defendant. Although defendant denied that he was refusing the assistance of counsel, his actions reflected a desire not to be represented. These actions also rebuked any waiver attempt, leaving the court (as it recognized) in a dilemma—either continue to appoint counsel and have defendant terminate them and further prolong the proceedings, or continue the exam without defense counsel to test the prosecution's case. The court chose the latter course, and on the basis of the forfeiture doctrine announced in *Kammeraad*, it could be argued that this did not violate defendant's Sixth Amendment right to counsel.

reversal is then required. However, if the denial of counsel at a critical stage does not infect the entire proceedings, then a court must determine whether the denial of counsel at a critical stage constitutes harmless error. Indeed, there is a wealth of both federal and state decisions that come to the same conclusion under very similar circumstances. We address those below.

Because we are addressing an alleged federal constitutional error, we are guided by federal precedent. *People v Anderson*, 446 Mich 392, 404; 521 NW2d 538 (1994). Under federal constitutional law, as our state courts have noted, "most constitutional errors can be harmless, but [] a limited class of constitutional errors are structural and are subject to automatic reversal." *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000), citing *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999). "Structural errors, as explained in *Neder*, are intrinsically harmful, without regard to their effect on the outcome, so as to require automatic reversal." *Duncan*, 462 Mich at 51. This hold true because "structural errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for a determination of guilt or innocence." *Id*. at 52. An error becomes a structural defect when it "infects the entire trial mechanism" *Anderson*, 446 Mich at 406. See also *Arizona v Fulminate*, 499 US 279, 309-310; 111 S Ct 1246; 113 L Ed 2d 302 (1991).

We have previously defined a structural error as a defect "that affect[s] the framework of the trial, affect[s] the truth-gathering process and deprive[s] the trial constitutional protection without which the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *People v Watkins*, 247 Mich App 14, 26; 634 NW2d 370 (2001). As the *Watkins* Court noted, the United States Supreme Court has found very few errors that rise to the level of structural error, and those few found to be structural error include "(1) a complete denial of counsel, (2) a biased trial judge, (3) racial discrimination in grand jury selection, (4) denial of self-representation, (5) denial of a public trial, and (6) a defective reasonable doubt instruction." *Id*. A finding of structural error is the exception, rather than the rule. *Id*. at 26-27.

Contrary to the categorical statements by the *Buie* and *Willing* Courts regarding the need for automatic reversal, the United States Supreme Court concluded long ago that the failure to provide defendant with counsel at a preliminary examination does *not* require automatic reversal. In *Coleman*, where the Supreme Court first held that a preliminary exam is a critical stage of a criminal proceeding at which defendant has a right to counsel, the Court held that defendant was deprived of counsel during that critical stage, but nevertheless remanded the matter to the Alabama courts to determine whether trial counsel's absence constituted harmless error. See *Coleman*, 399 US at 11.

Defendant argues, and the *Buie* and *Willing* Courts seemed to hold, that *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), decided some 14 years after *Coleman*, now requires application of an automatic reversal standard *anytime* there is a denial of counsel at a critical stage in the proceeding. See *Willing*, 267 Mich App at 224 n 32. But as Justice MARKMAN has recognized, "every federal circuit court of appeals has stated, post-*Cronic*, that an absence of counsel at a critical stage may, under some circumstances, be reviewed for harmless error." *People v Murphy*, 481 Mich 919, 923; 750 NW2d 582 (2008) (MARKMAN, J., concurring). State courts have also recognized that *Coleman* adopted a harmless error test for certain constitutional deprivations occurring at critical stages of criminal proceedings, and that *Cronic* has not altered *Coleman's* principle. *People v Tena*, 156 Cal App 4th 598, 613; 67 Cal

-4-

Rptr 3d 412 (2007); *State v Dennis*, 185 NJ 300, 302; 885 A2d 429 (NJ, 2005); *State v Brown*, 279 Conn 493, 506-507, 507 n 5; 903 A2d 169 (Conn, 2006); *Commonwealth v Carver*, 292 Pa Super 177, 179-180; 436 A2d 1209 (Pa, 1981).

In light of this plethora of case law, it is difficult to say that a structural error warrants automatic reversal *every time* a defendant is deprived of counsel at a critical stage of the proceedings, as both *Buie* and *Willing* stated. Not only is such a proposition contrary to the cases noted above (most especially *Coleman* and all those cited by Justice MARKMAN), but it also disregards what the Supreme Court has repeatedly said must be shown before automatic reversal is required: a defect that undermines the entire proceeding. See *United States v Dominguez Benitez*, 542 US 74, 81; 124 S Ct 2333; 159 L Ed 2d 157 (2004) ("It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding); *Fulminate*, 499 US at 310 (Referring to structural errors requiring automatic reversal, the Court stated that "[e]ach of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."); *Sweeney v United States*, 766 F3d 857, 860 (CA 8, 2014) (the court noted that "[o]nly structural defects that undermine 'the fairness of a criminal proceeding as a whole…require[] reversal without regard to the mistake's effect on the proceeding.' ").

As *Coleman* made clear, the absence of counsel at the preliminary hearing does not necessarily undermine the fairness of the entire criminal proceeding. It is one step in the criminal proceedings, and particularly when no evidence from that exam is used at trial, is not considered a "Sixth Amendment violation[] that *pervade[s] the entire proceeding*" that can "never be considered harmless." *Sweeney*, 766 F3d at 860-861, quoting *Satterwhite v Texas*, 486 US 249, 256; 108 S Ct 1792; 100 L Ed 2d 284 (1988). Accord: *Tena*, 156 Cal App 4th at 613 ("an error that would constitute a structural defect *at trial* is not invariably reversible per se when confined to the preliminary hearing."); *Norton v State*, 43 P3d 404, 408 (Ok App, 2002) ("We therefore hold, consistent with *Coleman*[], that the denial of counsel at a preliminary hearing is subject to harmless error analysis."). Accordingly, we would apply a harmless error test to the Sixth Amendment violation that occurred here.

At oral argument before this Court, defense counsel conceded that no evidence from the preliminary exam was used at trial. Defendant also did not waive any rights or defenses by not participating in the preliminary exam. There is also no doubt that defendant had counsel during the remainder of the proceedings, including the entire trial. We would therefore hold that the denial of defendant's Sixth Amendment right to counsel, though occurring at a critical stage, was harmless error. See *United States v Owen*, 407 F3d 222, 227 (CA 4, 2005) (discussing much of the same criteria and finding harmless error).

## III. REMAINING ISSUES

Although we have already concluded that we are required to reverse defendant's convictions and remand for a new trial, for the sake of expediency we turn to those remaining issues raised by defendant that may arise at retrial.

## A. PHOTOGRAPHIC LINE-UP

Defendant argues that he was denied a fair trial when evidence regarding a photographic line-up that was conducted while defendant was in custody was admitted at trial. Defendant argues that, because he was in custody, a corporeal lineup should have been used, and that at the very least, counsel should have been present at the photographic line-up. Defendant also argues that his trial counsel was ineffective for failing to move for suppression of the line-up and for failing to request a corporeal lineup.

In order to preserve an issue regarding suppression of identification, the defendant must move the trial court to suppress the identification or move for a hearing regarding the suggestiveness of the prior identification. *People v Daniels*, 163 Mich App 703, 710; 415 NW2d 282 (1987). Defendant did neither, so this issue is not preserved for appeal.

This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to avoid forfeiture of the issue, (1) error must have occurred (2) the error must have been plain, i.e., clear or obvious and (3) the plain error affected the defendant's substantial rights. *Id*. This third requirement is satisfied if the defendant can demonstrate prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id*. If the defendant satisfies these three requirements, this Court will only grant reversal when the plain error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*.

Under Michigan law, identification by a corporeal lineup is required when an accused is in custody unless a legitimate reason for holding a photographic line-up exists. *People v Kurylczyk*, 443 Mich 289, 298; 505 NW2d 528 (1993). Legitimate reasons for conducting a photographic line-up instead of a corporeal lineup when the defendant is in custody include (1) it is not possible to arrange a proper lineup, (2) there are an insufficient number of individuals available who have similar physical characteristics, (3) the nature of the case requires an immediate identification, (4) the witnesses are located too far away from the location of the accused, (5) the accused refuses to participate and would seek to destroy the value of the identification. *People v Anderson*, 389 Mich 155, 186 n 1, 187 n 2-5; 205 NW2d 461 (1973), overruled on other grounds by *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004).

Because defendant never raised this issue in the trial court, the record is devoid of any justification for using a photographic line-up instead of a corporeal line-up while defendant was in custody. We will therefore assure that the decision to admit the identification evidence resulting from the photographic line-up was plain error, because we conclude that defendant cannot demonstrate that any error affected his substantial rights i.e., that it affected the outcome of the lower court proceedings. While Jackson, Goward, and Folson were shown the photographic line-up, Blanton was not and still identified defendant as the man who set fire to 20438 Hawthorne. In addition, because Jackson, Goward, and Folson had an independent basis for their identifications of defendant, the in-court identification is still permissible if it can be demonstrated that the witness had a basis, independent of the line-up, for the identification. *People v Gray*, 457 Mich 107, 114-115; 577 NW2d 92 (1998).

The *Gray* Court stated that the following factors should be considered: (1) a prior relationship with or knowledge of the defendant, (2) the opportunity to observe the offense, (3)

the length of time between the offense and the disputed identification, (4) the accuracy or discrepancies in the line-up description and the defendant's actual description, (5) any previous proper identification or failure to identify the defendant, (6) any identification prior to the line-up of another person as defendant, (7) the nature of the alleged offense and the physical and psychological state of the victim, and (8) any idiosyncratic or special features of the defendant. *Id.* at 116. While Jackson, Goward, and Folson did not have a prior relationship with defendant, they all had an extended opportunity to observe defendant. They all testified that they watched as he walked down the street and into the homes that were eventually set on fire. In addition, the identifications made by Jackson and Goward were made within days of the fires.

While defendant notes minor discrepancies in Goward's and Folson's description of what defendant was wearing on the day in question, Goward accurately described defendant as wearing a hat and a blue hooded jacket. In addition, Folson was able to provide a voice identification of defendant. Finally, both Mayers and Richardson testified that when they encountered defendant, he began to flee. Once defendant was apprehended, four cigarette lighters were found in his pocket. Therefore, it cannot be said that the use of a photographic line-up instead of a corporeal lineup affected defendant's substantial rights.

## B. ABSENCE OF COUNSEL AT PHOTOGRAPHIC LINE-UP

In order to preserve a claim regarding denial of counsel at a photographic line-up, defendant must challenge the line-up before or during the preliminary examination or make a pretrial motion to suppress. *People v Solomon*, 82 Mich App 502, 506; 266 NW2d 453 (1978). Defendant failed to do so, and this issue is not preserved for appeal. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763.

The right to counsel at a photographic line-up attaches with custody. *Anderson*, 389 Mich at 186-187. However, in *Hickman*, 470 Mich at 603, the Court subsequently held that at corporeal lineups the right to counsel does not attach until "the initiation of adversarial criminal proceedings." Adversarial criminal proceedings are considered to have commenced after a "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v Illinois*, 406 US 682, 689; 92 S Ct 1877; 32 L Ed 2d 411 (1972).

The Court in *Hickman* ruled that *Anderson*'s expansion of the right to counsel to the period before the initiation of adversarial criminal proceedings was not supported by either the United States Constitution or the Michigan Constitution. *Hickman*, 470 Mich at 603-604. While *Hickman* involved a corporeal line-up, it stands to reason that no such right exists in the context of photographic line-ups either. At the time of the line-up, defendant had been arrested, booked into custody, and fingerprinted. However, because adversarial criminal proceedings had not commenced at the time of the identification, the right of counsel had not yet attached to defendant. Defendant was not entitled to counsel at the time of the photographic line-up.

## C. VOICE IDENTIFICATION

Defendant next argues that he was denied due process of law when a voice identification by Folson was admitted at trial, because the voice identification was suggestive and lacked a sufficient foundation for admission.

In order to preserve an issue regarding suppression of identification, the defendant must move the trial court to suppress the identification or move for a hearing regarding the suggestiveness of the prior identification. *Daniels*, 163 Mich App at 710. While defense counsel objected to Folson's testimony on the ground that it would be inflammatory under MRE 403, she did not move to suppress Folson's identification or move for a hearing regarding the suggestiveness of the identification. Because this issue is not preserved for appeal, we review for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

"The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Murphy (On Remand)*, 282 Mich App 571, 584; 766 NW2d 303 (2009). "Vocal identification evidence is competent if the identifying witness demonstrates certainty . . . in the mind . . . by testimony that is positive and unequivocal." *Id*. In addition, voice identification must be based on a peculiarity in the voice or on sufficient previous knowledge by the witness of the person's voice. *Id*.

The voice identification procedure was not so impermissibly suggestive that it led to a substantial likelihood of misidentification. *Id*. Folson testified that defendant was yelling that a white man had been raping several women and defendant asked Folson if he had seen the man. Nothing has been offered to establish that the voice identification was impermissibly objective, and the totality of the circumstances do not suggest otherwise. Folson then observed defendant go into the home. When defendant emerged from the home, he again approached Folson and asked if he had seen the man. This demonstrates that Folson had a high degree of attention to defendant's voice. Folson also testified that he was certain that defendant's voice matched the voice of the individual who walked into the home when he heard it just under five months later. The totality of the circumstances, as well as Folson's certainty that defendant was the perpetrator, indicate that the voice identification was permissible.

Defendant also argues that Folson's vocal identification lacked an adequate foundation. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Therefore, defendant's objection to Folson's testimony on MRE 403 grounds was insufficient to preserve a foundational challenge on appeal. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763.

MRE 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The evidentiary rule provides examples of proper authentication. In the context of voice identification, MRE 901(b)(5) provides that "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker" is an acceptable method of authentication.

As already noted, Folson had ample opportunity to hear defendant's voice on the day in question. Defendant was yelling and approached Folson twice to talk to him. Folson was of the opinion that it was defendant's voice given that he had the opportunity to hear it first hand from a short distance away. Folson's voice identification of defendant did not lack foundation and any issues with the identification would affect only the weight of the identification, not its admissibility. *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). Therefore, the trial court did not commit plain error in allowing Folson's voice identification testimony.

## D. *BRADY v MARYLAND*

Defendant also argues that he was denied due process of law pursuant to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), when the lighters found in his pocket were lost or destroyed. In order to preserve for appeal an issue regarding the prosecution's suppression of evidence, defendant must have moved for a new trial or for relief from judgment in the trial court. *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). Defendant did not move for a new trial or for relief from judgment in the trial court or raise the issue of a *Brady* violation at any time in the trial court. Therefore, this issue is not preserved for appeal. Again, this Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. The Michigan Supreme Court has since articulated a three-part test to determine whether a *Brady* violation has occurred: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). In addition, MCR 6.201(B)(1) requires disclosure, upon request, of "any exculpatory information or evidence known to the prosecuting attorney."

Here, the evidence showed that Richardson discovered four lighters in defendant's pocket, took a picture of the lighters, and handed them over to police officers. However, the lighters were lost and never placed in evidence. Therefore, regardless of the government's good faith or bad faith in losing the lighters, they are considered suppressed for purposes of *Brady*.

Evidence is considered to be favorable to the defense when "it is either exculpatory or impeaching." *Id*. Defendant contends that if he had possession of the lighters, he could demonstrate that they were inoperable, and could not have been used to start the fires. Defendant does not provide any corroboration for this claim or explain why he would be carrying around multiple inoperable lighters while fleeing from the scene of a fire. If, contrary to defendant's claim, the lighters were operable, their introduction at trial would have been harmful to defendant. Thus, defendant cannot satisfy the materiality requirement because it cannot be said that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*.

Defendant's convictions are vacated and the matter is remanded for a new trial. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray