*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HONG YUAN LI,

        Defendant-Appellant.

UNPUBLISHED
June 16, 2026
9:44 AM

No. 370392
Oakland Circuit Court
LC No. 2022-282299-FC

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Hong Yuan Li, helped arrange a 10-kilogram delivery of cocaine intercepted by Oakland County law enforcement officials. He appeals his drug conspiracy and firearms convictions resulting from that attempted drug deal, contending the trial court erroneously admitted hearsay evidence in violation of his constitutional right to confrontation and despite it being substantially more prejudicial than probative under MRE 403. We disagree and affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

This case begins with an execution of a search warrant at Darren Simpson's apartment in Pontiac. The search uncovered a kilogram of cocaine (in crack and powder form), numerous firearms, and $20,000 in cash. While in jail, Simpson offered to cooperate; so, law enforcement officials—including Oakland County Detective Ruben Garcia—met Simpson to hear what broader information he might be able to provide.

Important for this appeal's purposes, Simpson did not testify at trial. But Garcia did, testifying about what Simpson told him at the jail (and thereafter). Garcia explained, for example, that Simpson detailed how "his previous deal happened"—i.e., how the cocaine found pursuant to the search warrant was delivered to his apartment. Officials later reviewed video from the apartment complex and concluded that it "coincide[d]" with what Simpson told him. Notably, Garcia did not provide details about that prior transaction, including who was involved in that delivery.

Garcia next testified that Simpson told him that he could "get a certain amount of . . . kilos. . . .[B]ig amounts." With that promise, Garcia gave Simpson permission to use his cell phone (which was collected into evidence following Simpson's arrest) to secure additional cocaine. In Garcia's presence, Simpson then called a man he knew as "Joe" on speaker; the call was recorded and played to the jury. In that call, Simpson explained "that the stuff that he had bought prior moved real fast and it was real good stuff" and thus asked to order 10 kilograms of cocaine (a few of which Simpson offered to "go in on" with "Joe"). "Joe" was amenable, but "had to make a call . . . to see if they could make those arrangements." That effort was fruitful. On the following day, Simpson and "Joe" talked again (once more using Simpson's phone on speaker and again played to the jury), with "Joe" agreeing to secure 10 kilograms for $29,000 per kilogram. The parties settled on consummating the delivery at Simpson's apartment complex in a few days' time.

"Joe" met Simpson on the delivery day in the parking lot. Monitoring Simpson's conversations through electronic surveillance, law enforcement officials listened as the two chatted and gambled while waiting for the delivery. Eventually, "Joe" relayed that a red Honda or Hyundai would arrive in about 10 minutes. A car matching that description arrived soon thereafter; a man got out of that car's backseat and approached "Joe's" car with a backpack. Officers then took all parties into custody. In the backpack, they discovered "10 square multicolored wrap[ed] . . . packages," which later tested positive for cocaine.

The man Simpson knew as "Joe" was actually defendant. He quickly admitted to being a "middleman" for the deal. Defendant told officers that he "was there for security reasons" and was paid $5,000" for his efforts, but denied knowing Simpson. Officers conducted an inventory search of defendant's car and found a handgun and ammunition, as well as several cell phones. One of those phones contained items both refuting defendant's disclaiming of knowing Simpson and indicating defendant was involved in the drug trade—on it were calls and messages between defendant and Simpson about meeting that day (like "be there in 10 minutes"), pictures of Simpson "cooking up crack," pictures of defendant, and pictures of trafficking paraphernalia (including presses, stamps, and packaged cocaine). Garcia testified that the same number Simpson called from the jail was associated with that phone; specifically, that it was defendant's "phone number." He also noted they uncovered messages from another number (i.e., the number of the individual with the backpack) to defendant on that day stating "E-T-A 10 minutes" and "here looking for you."

Based on these and other facts, a jury convicted defendant of conspiring to deliver 1,000 grams or more of cocaine, in violation of MCL 750.157a and MCL 333.7401(2)(a)(*i*); possessing a firearm in the commission of a felony (felony-firearm), in violation of MCL 750.227b; and carrying a concealed weapon, in violation of MCL 750.227. The trial court sentenced defendant as a second-offense habitual offender to eleven to twenty years for conspiracy, two years for felony-firearm, and two to seven-and-a-half years for carrying a concealed weapon. Defendant now appeals by right.

## II. THE ADMISSION OF SIMPSON'S STATEMENTS DID NOT VIOLATE THE CONFRONTATION CLAUSES

Defendant's first claim of error concerns his constitutional confrontation rights. He asserts the trial court's admission of several of Simpson's statements (via Garcia) require a retrial. The complained-of statements generally fall into two categories: (1) Simpson's description of how he obtained cocaine in the past and his subsequent offer to "order up" "big amounts"; and (2) the disclosure of Simpson's telephone number.

The United States and Michigan Constitutions guarantee a defendant the right to confront a witness against him or her. US Const, Am VI; Const 1963, art 1, § 20. This protection applies to "testimonial statements," i.e., if "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v Washington*, 514 Mich 583, 592-593; 22 NW3d 507 (2024) (cleaned up). However, a defendant's confrontation rights do not apply to "the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 593, quoting *Crawford v Washington*, 541 US 36, 60 n 9; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (quotation marks omitted).

This Court generally reviews Confrontation Clause questions de novo, see *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011), and a trial court's evidentiary rulings for abuse of discretion, see *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). But when a defendant fails to preserve issues below, the plain-error standard applies instead. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Here, defendant advanced no confrontation-related objection below (and as set forth next, objected only to one complained-of statement on hearsay grounds).

*Past and future cocaine delivery*. Defendant primarily claims the trial court erroneously permitted Garcia to testify about Simpson's detailing of his past efforts to secure cocaine, coupled with his I-can-order-up-big-amounts proclamation. In his view, that "background information" "had the primary purpose of establishing or proving past events potentially relevant to later prosecution"; to wit, suggesting defendant delivered the kilogram of cocaine found at Simpson's apartment in order to prove he organized the delivery of the 10 kilograms of cocaine officers seized from the backpack. See *People v Henry (After Remand)*, 305 Mich App 127, 153; 854 NW2d 114 (2014).[1] He only objected—on hearsay grounds—to the "big amounts" statement below, so abuse-

---

[1] We note when determining whether a statement is testimonial, our Supreme Court has "soundly rejected application of the 'primary purpose' test outside of the emergency context." *Washington*, 514 Mich at 594. Instead, courts must apply *Crawford*'s well-established dictate, "ask[ing] whether the statement was 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 595-596, quoting *Crawford*, 541 US at 52.

of-discretion review would apply to just that statement and plain error to the rest.[2]  But that split in review standard matters not, for defendant's challenge fails for lack of error, let alone one that reflects an abuse of discretion or is plainly erroneous.

The past-and-future-cocaine-delivery testimony was not hearsay evidence subject to exclusion under MRE 801(c), and thus its admission did not implicate the Confrontation Clauses. A party may introduce an out-of-court statement not for the truth-of-the-matter asserted but rather "to show the effect on the hearer . . . when this effect is relevant." *People v Fisher*, 449 Mich 441, 449; 537 NW2d 577 (1994) (quotation marks and citation omitted).  And the record here demonstrates the prosecutor offered this "background information" to explain why Garcia acted in response to it by allowing Simpson to place phone calls to defendant using Simpson's cell phone from jail.  Simpson was not a known informant to law enforcement, and Garcia testified that they frequently hear potential informants offer big promises without following through—"we get lied to so much."  Because "a statement offered to show why police officers acted as they did is not hearsay," *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007), permitting Garcia to explain that context to the jury rendered it non-hearsay.

*Defendant's telephone number*.  Next, defendant challenges Garcia's testimony that a certain telephone number "was associated" with defendant.  The prosecution offered that phone number, defendant contends, "to prove the identity of the person Mr. Simpson dialed from the jail."  Defendant having failed to object below, we review this issue for plain error.  That means defendant must demonstrate (1) an error, (2) that was plain, and (3) affected the outcome of the lower court's proceedings.  *Carines*, 460 Mich at 763.  And even if he could do that, we may exercise our discretion to correct a "plain, forfeited error" only if it either "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity or public reputation of judicial proceedings. . . ."  *Id*. at 763-764 (cleaned up).

We see no plain error meriting reversal.  Simply, the giving of a phone number is not an out-of-court statement that establishes a person's identity.  See MRE 801(a) ("Statement means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").  Garcia testified that pursuant to the search warrant he obtained to search defendant's phone, he learned that phone number matched the phone number Simpson called from jail.  And even if we were to conclude otherwise, no binding caselaw provides that the listing of a telephone number, in and of itself, constitutes inadmissible hearsay.[3]  Nor can we be certain that evidence

---

[2] We would be remiss to not observe that MCR 7.212(C)(7) requires identifying places in the record where a particular "issue was preserved for appeal by appropriate objection or by other means."  Although defendant's counsel identified trial counsel's objection to the "big amounts" testimony, she failed to note the lack of any objection as to the other issues she raised on appeal.  Doing so risks forfeiture.  See *People v Milstead*, 250 Mich App 391, 404 & n 8; 648 NW2d 648 (2002).

[3] To be sure, this Court has held that a name contained on a phone's "contact information" can be hearsay.  See *People v Swift*, unpublished per curiam opinion of the Court of Appeals, issued Dec. 10, 2013 (Docket No. 311189), p 3-4.  But contrary to defendant's assertion, that case is not

affected the outcome of the lower court's proceedings given the strength of the evidence admitted against defendant, including there being other evidence gathered from that phone linking it to defendant and his confession to Garcia. For these reasons, defendant cannot establish plain error.

*Conclusion*. Because defendant cannot establish the trial court erroneously admitted hearsay evidence against him, his confrontation challenge is without merit.

## III. SIMPSON'S STATEMENTS WERE NOT SUBSTANTIALLY MORE PREJUDICIAL THAN PROBATIVE UNDER MICHIGAN RULE OF EVIDENCE 403

Defendant further contends that the danger of unfair prejudice substantially outweighed the probative value of Simpson's statements, and they thus should have been excluded under MRE 403. He did not, however, advance an MRE 403 challenge to that evidence below, limiting our review to plain error. *Carines*, 460 Mich at 763. Plain error on the record before us is absent for a multitude of reasons.

First, as with his confrontation challenge, defendant's appellant brief does not acknowledge his failure to preserve this issue below or specifically advance any argument concerning how he satisfies that discerning standard. So, he has forfeited the issue for our review. *People v Milstead*, 250 Mich App 391, 404 & n 8; 648 NW2d 648 (2002) (requirement to demonstrate preservation); *People v Helmer*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 369063); slip op at 9 (undeveloped arguments).

Second, we cannot agree MRE 403 applies in this instance. That rule "does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted). "Unfair prejudice exists only where either a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, or it would be inequitable to allow the proponent of the evidence to use it." *People v Murphy (On Remand)*, 282 Mich App 571, 583; 766 NW2d 303 (2009). No such probability exists here with the introduction of Simpson's statements, which both served to explain why law-enforcement officials acted as they did and were highly probative in coloring the trafficking conspiracy. And we cannot agree with defendant's claim that *People v Wilkins*, 408 Mich 69; 288 NW2d 583 (1980), mandates a different result—there the evidence introduced was hearsay (unlike here), not relevant (unlike here), and "pointed to the defendant's guilt of the crime charged" (unlike here). *Id.* at 73-74.

Third, we fail to see how the introduction of that evidence "affected the outcome of the lower court's proceedings" *or* "seriously affected the fairness, integrity or public reputation of judicial proceedings. . . ." *Carines*, 460 Mich at 763-764. Defendant's appellant brief represents that "there was no other evidence to support that Mr. Li was anyone other than a random person Mr. Simpson gambled with in front of his residence." But that is plainly not the case—defendant *admitted* to participating in the cocaine's delivery, the jury *heard* defendant's calls with Simpson

---

germane because at issue here is a phone number and a witness (Garcia) having personal knowledge of that phone number gained during his investigation of defendant and not the direct linking of a cell phone number to a person via "contact information."

arranging the deal, and electronic evidence recovered from defendant's phone not only *depicted* defendant's trafficking proclivities but also *confirmed* details of the transaction at issue. This issue is without merit.

## IV. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock