*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re SLOCUM, Minors.

UNPUBLISHED
October 19, 2023

No. 365695
Mecosta Circuit Court
Family Division
LC No. 22-006812-NA

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent-mother appeals of right an order of disposition concerning her minor children, SMS, EAS, MMS, and MWS. Respondent challenges the trial court's exercise of jurisdiction over the children after a jury trial. In addition, respondent asserts that the trial court erred by failing to address misrepresentations to the jury that should have resulted in a mistrial and by permitting the admission of hearsay and other testimony that the court should have excluded. Finally, respondent claims the trial court abused its discretion by denying her request for reconsideration. We affirm.

## I. FACTUAL BACKGROUND

Respondent is the mother of six children. Two are her biological children, PS and ZS, who are young adults,[1] and the other four children are siblings whom respondent adopted. In 2014 and 2015, respondent and her long-time partner, Steven Okke, became foster parents for siblings, SMS, EAS, MMS, and MWS. Respondent adopted the boys in 2015, then she adopted the girls in 2017, but Okke did not join in any of the adoptions. When respondent adopted the children, their foster relationship expired.

On August 30, 2022, Mecosta County Sheriff's deputies went to a Walmart parking lot in Big Rapids after receiving a complaint that a man was striking a child in the back seat of a parked vehicle. When deputies arrived, Okke was arrested for assault and taken into custody. Respondent was located inside the store's vision center and instructed to take MMS to the hospital for a medical

---

[1] The trial court originally asserted jurisdiction over respondent's oldest daughter, PS, but in March 2023, the court terminated its jurisdiction after PS turned 18.

examination. The deputies notified Children's Protective Services (CPS) and took photographs of MMS depicting faint bruising and swelling on MMS's forehead and mouth, cuts on the inside of his lips, and dried blood on his mouth.

In the wake of the incident on August 30, 2022, CPS met with respondent and forensically interviewed the children. CPS believed that respondent was not cooperating with the investigation, so the Department of Health and Human Services (DHHS) filed a petition on October 5, 2022, asking the court to take "in-home" jurisdiction of the children and order respondent to comply with services.[2] In addition to allegations concerning the August 2022 incident, the petition alleged that respondent physically abused the children. Specifically, Paragraph (F) of the petition asserted that, between February 2018 and September 20, 2022, CPS had investigated respondent eight times for physical abuse and improper supervision, and four of the complaints were substantiated. Although the children were never removed from respondent's care, CPS attempted to institute a safety plan and implement a no-contact order in Okke's criminal case that barred him from being in the home or having contact with the children.

The petition was amended in January 2023 to remove every reference to respondent's prior CPS contacts. Specifically, Paragraph (F) was stricken from the petition. Contrary to respondent's claim, the record does not indicate that the allegations regarding respondent's earlier CPS history were precluded as a discovery sanction for failing to provide copies of CPS reports to respondent. Rather, the DHHS indicated that it did not intend to present any evidence concerning earlier CPS investigations, so it agreed to remove all allegations about that subject—entitled Prior CPS History / Prior Services—from the petition.

Respondent's three-day adjudication trial took place before a jury in February 2023. Case workers, a therapist, and a social worker testified about their experiences providing services to the children. Respondent's oldest son, ZS, testified about not witnessing any physical discipline from respondent while he lived in the home, but the case workers explained that the children had been hit in the chest, made to stand through dinner, and forced to do repetitive actions.

The jury returned a verdict concerning each of the minor children. Specifically, the verdicts established that SMS was "subject to a substantial risk of harm to her mental well-being" and EAS, MMS, and MWS similarly were "subject to a substantial risk of harm to [their] mental well-being" and those children's "home environment, by reason of respondent's neglect, cruelty, drunkenness, criminality, or depravity on the part of respondent" was an unfit place for those three children to live. Based upon the jury's verdicts, the trial court found statutory grounds to exercise jurisdiction over the children. In March 2023, the trial court denied respondent's motion for reconsideration. Respondent then filed this appeal.

## II. LEGAL ANALYSIS

In challenging the trial court's exercise of jurisdiction over all four of the minor children, respondent presents a mélange of issues. First, she argues that, despite the jury's verdicts, the trial

---

[2] Initially, Okke was named as a nonparent respondent in the petition. The petition was amended on January 19, 2023, and did not include Okke as a nonparent respondent.

court lacked a basis to assert jurisdiction. In order "to take jurisdiction over a child, the trial court must find that the petitioner has proved by a preponderance of the evidence one or more statutory grounds for the taking of jurisdiction alleged in the petition." *In re Kanjia*, 308 Mich App 660, 664; 866 NW2d 862 (2014). "We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

Next, respondent faults the trial court for improperly admitting evidence, including hearsay statements. The Michigan Rules of Evidence for civil proceedings apply at the adjudication trial. MCR 3.972(C)(1). This Court reviews for an abuse of discretion a trial court's decision regarding the admission of evidence. *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). An abuse of discretion occurs if the trial court chooses an outcome that falls outside the range of principled outcomes. *Id*. "When an evidentiary question involves a question of law, such as the interpretation of a statute or court rule, our review is de novo." *Id*.

Next, respondent argues that, at the adjudication trial, the court incorrectly allowed the jury to consider allegations that were not pleaded in the petition. At the adjudication trial, "the verdict must be whether one or more of the statutory grounds alleged in the petition have been proven[,]" MCR 3.972(E), and "the petitioner has the burden of proving by a preponderance of the evidence one of more of the statutory grounds for jurisdiction alleged in the petition." *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). Thus, the admissible evidence at an adjudication trial must be confined to evidence that bears upon the allegations in the petition.

Next, respondent accuses the trial court, petitioner, and a juror of engaging in misconduct during the adjudication trial. Whether "judicial misconduct denied [a party] a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Similarly, claims of misconduct by a state actor, such as petitioner in this case, are "reviewed de novo to determine whether the [opposing party] was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). In contrast, we review a trial court's decision to remove a juror for misconduct only for an abuse of discretion. *People v Mahone*, 294 Mich 208, 215; 816 NW2d 436 (2011).

Finally, respondent faults the trial court for denying her motion for reconsideration aimed at overturning the outcome of the adjudication trial. "We review for an abuse of discretion a trial court's decision on a motion for reconsideration." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014). "An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Id*. With all these standards in mind, we shall take up respondent's numerous challenges *seriatim*.

## A. JURISDICTION OVER THE MINOR CHILDREN

Respondent contends that the trial court erred by determining that the children came within the statutory requirements of MCL 712A.2(b)(1) and (2), as the jury concluded at the adjudication trial. Specifically, respondent describes the evidence as insufficient to establish a statutory basis for jurisdiction. We disagree.

Acquisition of jurisdiction over children at the adjudication phase requires a determination by a preponderance of the evidence that the children fall within the statutory requirements of MCL 712A.2. *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993). Under MCL 712A.2(b)(1) and (2), jurisdiction over a child may be asserted in the following circumstances:

> (1) [The child's] parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> (2) [The child's] home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

In cases that involve more than one child, the doctrine of anticipatory neglect may apply to confer jurisdiction. *In re BZ,* 264 Mich App 286, 296; 690 NW2d 505 (2004). That doctrine recognizes that how a parent treats one child is "probative of how that parent may treat other children." *In re LaFlure*, 48 Mich App 377, 392, 210 NW2d 482 (1973).

Here, an eyewitness testified that she observed Okke physically abuse MMS in a Walmart parking lot while respondent was inside the store. Photographs admitted at the adjudication trial showed bruising and swelling on MMS's forehead and mouth, cuts inside his mouth, and dried blood on his lips. When respondent was confronted with that evidence of abuse, she denied that Okke could have abused MMS. She also accused the children of lying and advanced implausible explanations for MMS's injuries. Evidence also disclosed that respondent stated more than once that she no longer wanted the children. There was also evidence that respondent was uncooperative with CPS and, at various times, indicated that she was unwilling to implement the proposed safety plans. Additionally, there was testimony that some of the children revealed during their forensic interviews that there was physical abuse in the home.

Although respondent's adult son, ZS, who no longer lived in the home, denied seeing the children being physically disciplined, he acknowledged on cross-examination that he had told the CPS investigator that respondent forced the children to run in place and that he thought the use of pushups as a disciplinary technique was excessive. He testified that the children were required to raise their hands to use the bathroom and that respondent kept the bathroom locked at night because the children would play in the bathroom. ZS also acknowledged that respondent, as a disciplinary technique, would make the children stand to eat. ZS also told CPS that the children were not happy with respondent and they hated the punishments that she imposed.

Respondent denied that the children were abused in the home by her or Okke, and she gave multiple explanations for some of her unconventional disciplinary methods, but the jury was free to disregard that testimony. *People v Perry,* 460 Mich 55, 63; 594 NW2d 477 (1999). We defer to the jury's conclusions regarding the credibility of witnesses. *In re Medina,* 317 Mich App 219,

227; 894 NW2d 653 (2016). After reviewing the evidence, we find no basis to disturb the jury's verdicts that grounds for jurisdiction under MCL 712A.2(b)(1) and (2) had been established by a preponderance of the evidence. Accordingly, the trial court did not err by exercising jurisdiction over the children.

## B. RELEVANT EVIDENCE AT THE ADJUDICATION TRIAL

Respondent challenges the relevance and admission of evidence concerning Okke's alleged abuse of MMS in the parking lot. Respondent reasons that because Okke was not named as a party to the petition and respondent was not present during the events in the Walmart parking lot, it was improper for the jury to hear evidence about the parking-lot incident. We can detect no abuse of discretion in the trial court's decision to admit that evidence at the adjudication trial.

As an initial matter, respondent never objected to admission of the challenged evidence at trial, so her claim of evidentiary error is unpreserved. MRE 103(a)(1); *In re Weiss,* 224 Mich App 37, 39; 568 NW2d 336 (1997). Therefore, our review of this issue is limited to plain error affecting respondent's substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). On plain-error review, respondent must establish that (1) error occurred; (2) the error was "plain," i.e., clear or obvious; and (3) the plain error affected her substantial rights. *Id.* "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Sanborn,* 337 Mich App 252, 258; 976 NW2d 44 (2021) (citation omitted). Also, the error must have "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *In re Ferranti*, 504 Mich at 29, quoting *People v Carines,* 460 Mich 750, 763; 597 NW2d 130 (1999). Respondent cannot meet any of those standards in challenging the admission of evidence about the parking-lot incident.

During the adjudicative phase, when jurisdiction is determined, the rules of evidence apply and legally admissible evidence is required. *In re AMAC,* 269 Mich App 533, 536-537; 711 NW2d 426 (2006). In general, all relevant evidence is admissible. MRE 402. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. That is, evidence is admissible if it helps shed light on any material point. *People v Murphy (On Remand),* 282 Mich App 571, 580; 766 NW2d 303 (2009). A material fact is one that falls within the range of litigated matters in controversy. *People v Zitka*, 335 Mich App 324, 333-334; 966 NW2d 786 (2020).

At the adjudication trial, the parties presented evidence that respondent left her children in Okke's care while she went into the store, and that while the children were in Okke's care, he was observed violently striking MMS while MMS was in the backseat of the car. The evidence further established that MMS suffered bruising and cuts to his forehead and mouth. That evidence plainly was relevant to whether the children were subject to a substantial risk of harm to their mental well-being and whether their home *or* environment, by reason of cruelty, criminality, or depravity on the part of the parent *or* a nonparent adult was an unfit place for the children to live. Accordingly, the evidence was relevant to the issues presented to the jury. Because the evidence was probative with respect to the environment in which the children lived, the trial court did not commit an error, plain or otherwise, in permitting the jury to hear testimony about the events in the Walmart parking lot.

In advancing her evidentiary claim, respondent asserts that it was improper for petitioner's counsel to elicit the following testimony from Mecosta County Sheriff's Deputy Michael Deaton:

*Q*. As a result of your investigation, was there any doubt in your mind about [MMS] being injured, first?

*A*. No.

*Q*. Was there any doubt about how he had been injured?

*A*. No.

*Q*. And that was based on your investigation, and our interviews with both him and both–and Mr. Okke; correct?

*A*. Correct.

Respondent did not object to that testimony at trial, so our review is limited to plain error affecting respondent's substantial rights. MRE 103(a)(1); *In re Ferranti*, 504 Mich at 29.

Respondent does not really explain why the challenged testimony was improper, other than offering the assertion that it usurped the jury's authority and led the jurors to believe that there was "no doubt" about what occurred. Moreover, she cites no legal authority to support the proposition that the questioning was improper. But we believe that the questioning and the resulting testimony were permissible under MRE 701. That rule permits a lay witness to testify in the form of opinions or inferences "which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." E.g., *People v Heft,* 299 Mich App 69, 83; 829 NW2d 266 (2012) (police officers were properly permitted to explain "the steps of their investigations from their personal perceptions"). Before answering the contested questions, Deputy Deaton was asked about the manner of his investigation as well as his personal perceptions. He offered no opinion about Okke's guilt. Rather, he merely described the steps he took that resulted in his opinion about what transpired. Under MRE 701, his testimony in the form of an opinion was permissible.

Respondent also insists that it was improper for petitioner's attorney to pose the following question to Deputy Deaton: "He [i.e., Mr. Okke] admitted he hit [MMS] right?" Respondent has offered no explanation of why that question was inappropriate. In any event, to the extent that the question could be viewed as improper, there is no basis for holding that the question itself affected the outcome of the adjudication trial. Respondent's counsel immediately objected, and the deputy was not allowed to answer the question. Moreover, further argument on the issues occurred outside the jury's presence. Before the court removed the jury, respondent's counsel interjected that "there was not any admissions by Mr. Okke in the report. There was admissions by the child that he hit his face with his notebook." Accordingly, to the extent that petitioner's counsel improperly tried to plant a seed that Okke admitted to hitting MMS, respondent's counsel planted a competing seed that the child admitted to hitting himself. Additionally, the trial court protected respondent's right to a fair trial by telling the jurors that they "may only consider the evidence that has been properly admitted in this case," that "[t]he questions which lawyers ask witnesses are . . . not evidence,"

and that they should "consider [the lawyers'] questions only as they give meaning to the witnesses' answers." Under the circumstances, respondent cannot establish that she was prejudiced by the mere fact that the question was asked, especially when the witness never answered the question.

## C.  ADMISSION OF HEARSAY

Respondent argues that she was denied a fair trial by the introduction of hearsay statements at trial, but she does not identify the particular statements that purportedly constituted inadmissible hearsay and she has not provided citations to the record to indicate where the challenged statements were introduced. Respondent simply alludes to the fact that witnesses testified about statements made by the children. Respondent "cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then research for authority either to sustain or reject [her] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks omitted). Issues that are insufficiently briefed can be deemed abandoned on appeal. *People v Iannucci,* 314 Mich App 542, 545; 887 NW2d 817 (2016). Considering respondent's deficient presentation of this claim of error, it may be considered abandoned. Nevertheless, we will consider respondent's vague claims of evidentiary error to the extent we are able.

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *In re Utrera*, 281 Mich App at 18. "Hearsay is inadmissible unless the rules of evidence provide otherwise." *Id.* In this case, respondent's argument refers to the plain-error standard applicable to review of unpreserved issues, so she appears to concede that her claims of error concerning hearsay are unpreserved, and thus subject to review for plain error affecting substantial rights. *In re VanDalen,* 293 Mich App 120, 135; 809 NW2d 412 (2011). Accordingly, we shall search the trial record for plain error that affected respondent's substantial rights.

Respondent expends the most effort asserting that the court and the parties failed to comply with the requirements of MCR 3.972(C)(2) before offering statements by the children. That court rule provides that statements by young children related to acts of child abuse are admissible, even though hearsay, if certain criteria are met. That rule only applies to a statement "made by a child under 10 years of age or an incapacitated individual under 18 years of age with a developmental disability as defined in MCL 330.1100a(26)." MCR 3.972(C)(2). All of the children in this case were over the age of 10 at the time they made the statements presented at the trial, and there is no reason to believe that any of the children were developmentally disabled. Additionally, petitioner did not invoke that rule at any time during the trial. Thus, that rule does not apply to this case.

Respondent also appears to suggest that petitioner elicited inadmissible hearsay statements from school social worker Corey Thompson, but respondent fails to identify the statements she is contesting. Respondent called Thompson in her case-in-chief. On direct examination, respondent asked Thompson if she told CPS that respondent was staying in a camper on the family property. In response to questions asked by respondent, Thompson testified that she reported that respondent was staying in a camper overnight because she was concerned the children were being left alone, and that her concerns were based on something someone had told her. Immediately thereafter, on cross-examination by the children's guardian ad litem (GAL), Thompson stated that PS and SMS told her that respondent was staying in the camper. Further, Thompson testified that SMS told her

that Okke had physically "put his hands on" MMS. Thompson was permitted to testify on cross-examination that PS and SMS both reported that respondent was "toxic" in the home, that she was always yelling at them, and that respondent's expectations were "too high."

If this is the testimony to which respondent vaguely refers in her brief, its admission does not constitute plain error. Respondent not only failed to object to the testimony, but also opened the door to it through her questions on direct examination. By raising an issue, a party opens the door to a full development of the subject. *People v Allen,* 201 Mich App 98, 103; 505 NW2d 869 (1993). Respondent asked Thompson if her belief that the children were being left alone was based on something she had been told. Thus, respondent placed at issue the foundation for Thompson's belief that the children were being left alone and the identities of the individuals who made those disclosures. Respondent cannot now complain of an error she precipitated. *People v Knapp,* 244 Mich App 361, 378; 624 NW2d 227 (2001).

To the extent the children's disclosures explained why Thompson made a report to CPS, they were not hearsay because they were not offered to prove the truth of the matter asserted. As we have ruled, if a statement is offered to explain why certain action was taken, it is not hearsay. *People v Chambers,* 277 Mich App 1, 11; 742 NW2d 610 (2007). Here, the statements made to Thompson were not introduced to prove the truth of the matters asserted, but rather were offered to demonstrate that the statements had the effect of causing Thompson to file a CPS complaint.

Even if any plain error occurred in the admission of hearsay statements through Thompson, respondent cannot show that such an error affected her substantial rights. The testimony that Okke struck MMS was cumulative of testimony given by other witnesses. Specifically, the eyewitness in the Walmart parking lot testified that she directly observed Okke physically assaulting a child in the backseat of the car in the parking lot. Consequently, respondent has not shown that she is entitled to relief in this regard. See, e.g., *People v Jordan,* 275 Mich App 659, 666-667; 739 NW2d 706 (2007).

Respondent also vaguely refers to the testimony of CPS investigator Johnnie Daniels, who testified that the children disclosed that respondent had "solar plexed" them as a form of discipline. But respondent was the first to present evidence of this nature. Indeed, respondent first permitted the jury to hear that the children reported to Daniels that she physically abused them, that the abuse included "solar plexing," and that, on one occasion, respondent struck EMS so forcefully that her face bruised to the point she could not talk or go to school. Again, a respondent cannot contribute to error by plan or design and then argue error on appeal. *Bloemsma v Auto Club Ins Ass'n (After Remand),* 190 Mich App 686, 691; 476 NW2d 487 (1991).

On direct examination by petitioner, Daniels testified he was a trained forensic interviewer and he spoke with all of the children shortly after the events took place in the Walmart parking lot. Daniels stated that he mentioned "solar plexing" to respondent. But when Daniels was poised to explain what solar plexing was, respondent objected, stating it was unclear how Daniels knew what the phrase meant. At that point, the court asked petitioner to lay a proper foundation. Daniels then agreed that it was something specifically described by the children. Further, he testified that when he asked respondent about solar plexing, respondent stated: "Why would I mess with their stomach when I can mess with their breathing?" As the trial unfolded, it was revealed that respondent was employed as a licensed respiratory therapist. Respondent opened the door to further inquiry. That

is, she contributed to the purported error when she objected and essentially required that Daniels explain how he learned the meaning of the phrase "solar plexing." In addition, the testimony that Daniels heard the term from the children was given to explain why Daniels asked respondent about solar plexing. Because this testimony was not offered for the truth of the matter asserted, but rather to explain why Daniels asked respondent about the term and how he gained his understanding of the term, it was not hearsay.

Respondent's contribution to the jury learning about statements from the children was not confined to that exchange. During respondent's cross-examination of Daniels, respondent played a recording that she made of her first face-to-face meeting with Daniels. In that recording, Daniels can be heard explaining to respondent that the children had reported that respondent had physically abused them. Daniels further informed respondent that the reported abuse included "solar plexing" if the children did not eat quickly enough, and respondent striking EAS in the face causing bruising that impaired her ability to speak. Later, on cross-examination by the GAL, Daniels testified that the children reported physical abuse that included "solar plexing." When respondent objected to that testimony, contending that the testimony constituted inadmissible hearsay, the court overruled respondent's objection, noting that respondent had "opened the door" by playing the recording for the jury. Nevertheless, the court restricted the inquiry to only those allegations of abuse that were mentioned in the recording. Daniels thereafter testified that two children reported that there was ongoing physical abuse in the home. On redirect examination by petitioner, Daniels testified that he prepared the petition after several children reported physical abuse in the home.

The record leaves no doubt that respondent, by playing the recording of her conversation with Daniels, contributed to any purported error in Daniels's testimony regarding statements made by the children. Therefore, she cannot now claim error on appeal in this regard. *Bloemsma*, 190 Mich App at 691. Furthermore, to the extent that Daniels testified that he prepared and filed the petition after receiving the children's reports of abuse, the statements were not hearsay. They only explained why Daniels took the course of action he chose. Thus, respondent has not demonstrated that she was denied a fair trial by the improper admission of hearsay statements at trial.

## D. RELIANCE ON UNPLEADED ALLEGATIONS

Respondent argues that her right to due process was violated because the jury was allowed to render verdicts establishing jurisdiction based on factual allegations that were not included in the petition. But because respondent never raised that due-process issue in the trial court, the issue is unpreserved. This Court reviews de novo whether a child protective proceeding complied with the parent's due-process rights. *In re Dearmon*, 303 Mich App 684, 693; 847 NW2d 514 (2014). But when a constitutional issue is unpreserved, our review is limited to plain error that affects the respondent's substantial rights. *In re VanDalen*, 293 Mich App at 135.

To initiate a child protective proceeding, a petitioner must file a petition setting forth "basic information about the children and the parents" and " '[t]he essential facts that constitute an offense against the child' with a citation to the relevant provisions of the juvenile code." *In re Dearmon*, 303 Mich App at 694, quoting MCR 3.961(B)(1) through (4). A respondent in a child protective proceeding is entitled to notice of an adjudication and also must be served with the petition. MCR 9.921(B)(1)(a). At the adjudication trial, the fact-finder must determine whether the petitioner has

established, by a preponderance of evidence, one or more of the statutory grounds for jurisdiction alleged in the petition. *In re Ferranti*, 504 Mich at 15.

The second amended petition filed on January 25, 2023, alleged that respondent and Okke physically abused the children. Also, the amended petition alleged that respondent did not protect the children from Okke's abuse, the children did not feel safe in the home, the older children were now physically defending themselves against the abuse, the older children feared for the safety of the younger children, respondent told the children that everything was their fault, and at least two of the children had run away from the home to flee the abuse. The petition sought jurisdiction of the children under MCL 712A.2(b)(1) and (2). We agree that certain factual allegations were not specifically included in the second amended petition, but we conclude that the jury's consideration of evidence related to those allegations did not violate respondent's due-process right to notice.

Respondent takes issue with the fact that, at the adjudication trial, the jury heard testimony that the children described respondent's home as "toxic," that respondent yelled, that respondent stayed in a camper where the older children were required to watch their younger siblings, and that respondent used unconventional discipline. The petition generally alleged that respondent abused her children. The evidence offered by respondent was relevant to this general allegation of abuse and was probative of whether respondent subjected the children to physical and emotional abuse. Respondent contends that because certain factual allegations were not included in the petition, she could not adequately prepare for trial. But it should not have come as a surprise to respondent that her parenting style would be addressed at trial. Respondent has not demonstrated that plain error occurred because she did not have adequate notice of the proofs she would have to contest when determining whether the children were within the court's jurisdiction.

Furthermore, a preponderance of the evidence supported the jury's verdicts that statutory grounds for jurisdiction were established, i.e., respondent and Okke physically abused the children, as alleged in the second amended petition. That evidence served as a sufficient foundation for the jury to find, by a preponderance of evidence, that the court could exercise jurisdiction over all the children. Put another way, there was no need for the jury to consider additional facts related to respondent's treatment of the children. Thus, any error flowing from the admission of additional evidence did not affect respondent's substantial rights.

## E. JUROR, ATTORNEY, AND JUDICIAL MISCONDUCT

On February 17, 2023, shortly after jury deliberations began, counsel for petitioner let the trial court and respondent's counsel know that a deliberating juror had failed to disclose during the jury selection process that she had "an open CPS case" at the time of the adjudication trial. The trial court promptly addressed the issue with counsel on the record, questioned the juror about her failure to disclose the open CPS case, dismissed the juror for cause, called in an alternate juror to replace the dismissed juror, gave additional instructions to the newly constituted jury, and sent the jurors to begin their deliberations anew. Respondent accuses the trial court, petitioner's counsel, and the excused juror of engaging in misconduct so egregious that a new trial must be ordered. As we have held, however, the removal of a juror under these circumstances is subject to review only for an abuse of discretion. *Mahone*, 294 Mich App at 215.

-10-

The record reveals that the trial court followed precisely the procedure prescribed by MCR 6.411, which addresses the replacement of a deliberating juror with an alternate juror in a criminal case. See *Mahone*, 294 Mich App at 215-218. Because MCR 3.972, which governs adjudication trials in child protective proceedings, does not prescribe a method for replacing a deliberating juror who must be replaced because of misconduct, we conclude that the trial court did not commit an abuse of discretion in the method it selected for replacing the juror who had to be excused during the course of deliberations. Consequently, neither the trial court's decision to remove the juror for misconduct nor its related decision to call back the excused alternate juror to join the deliberations that began anew warrants any relief on appeal.

Respondent specifically challenges the language the trial court used in explaining to all the remaining jurors why one of their fellow jurors had been excused, why a delay in the deliberations was necessary, and why an excused alternate juror would be joining them to deliberate. The trial court told the remaining jurors:

> So, members of the jury, you're probably wondering what this is all about. And we have a bit of an issue. And I'm going to apologize. I—there's—your other juror has been excused for cause. She apparently has an ongoing case with child protective services that she did not inform the Court about during her jury questioning. There's a very good chance I bring her in for contempt purposes next week, appoint an attorney for her, and see where that goes from there. But she likely—I'm going to have to review the record—but she likely misled the Court, misled you, wasted all of our times. So now that's the reason we have seven potential jurors.

The rest of the trial court's remarks at that stage were entirely unremarkable and, indeed, aimed at appropriately explaining the next steps for the remaining jurors. But respondent contends that the comments quoted above require a new trial, even though respondent's counsel voiced no objection after the trial court provided those comments to the remaining jurors.

As an initial matter, the failure to object to a jury instruction constitutes forfeiture of issues concerning the instruction. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (distinguishing forfeiture from waiver in the context of challenging jury instructions). According to MCR 2.512(C), waiver and forfeiture apply "in the case of instructions given after deliberations have begun, before the jury resumes deliberations[.]" Hence, respondent can only prevail if plain error affected her substantial rights. Here, the trial court's explanation to the jury, while thorough, was essential to prevent the jury from speculating about the excused juror's absence. Indeed, when the court excused the juror, it allowed her to return to the jury room to collect her belongings, but instructed her that she was not to speak to the other jurors. The court's actions in fully explaining the excused juror's abrupt departure prevented the remaining jurors from being distracted by issues unrelated to the case. Thus, we find no plain error in the trial court's approach, much less an error of that magnitude that affected respondent's substantial rights at a trial where evidence supporting the exercise of jurisdiction over respondent's minor children was overwhelming.

Finally, respondent takes aim at petitioner's counsel, asserting that opposing counsel acted improperly in failing to timely notify the trial court of the issue involving the juror who ultimately was excused for cause. Soon after deliberations began, the trial court went on the record with the

attorneys for both sides to discuss the juror issue. Petitioner's counsel explained that as the parties were walking out of court at the end of the previous day's proceedings, she learned from a DHHS supervisor that a juror had a pending CPS case. The supervisor had received that information just moments before telling petitioner's counsel because her telephone had been silenced for the trial. Petitioner's counsel told the court that, by the time she received that information, the attorneys had left the building for the day, so she did not believe there was much that could be done at that time. Although petitioner's counsel apparently did not inform respondent's counsel of the matter before the trial court and the attorneys went on the record at 9:30 a.m., the record suggests that petitioner's counsel informed the court or its staff. Soon after taking the bench, the trial court commented at the outset that it was aware that a record needed to be made "for something." Based on the existing record, respondent has failed to demonstrate that petitioner's counsel engaged in misconduct.

## F. MOTION FOR RECONSIDERATION

In her request of last resort, respondent contends that the trial court abused its discretion by denying her motion for reconsideration that sought outright victory on the issue of jurisdiction over her minor children or, in the alternative, a new trial. The language of MCR 3.992(A) provides that a motion for new trial in a child protective proceeding "will not be considered unless it presents a matter not previously presented to the court, or presented, but not previously considered by the court, which, if true, would cause the court to reconsider the case." A trial court's refusal to grant a rehearing or a new trial will be reversed only for an abuse of discretion. *In re Toler,* 193 Mich App 474, 478; 484 NW2d 672 (1992). Respondent has not established any error that denied her a fair trial, affected her substantial rights, or would have resulted in a different outcome. Rather, the record leaves no doubt that a preponderance of the evidence supports the jury's verdict. Therefore, the trial court did not abuse its discretion by denying respondent's motion for reconsideration or a new trial.

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

-12-